# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ROSARIO A. FIORANI, JR.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-739 (RWR)** |
| | ) | |
| **UNITED STATES OF AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS

The federal Defendants, the U.S. Department of Justice, Assistant United States Attorney David Hackney, and Special Agents John Wanat and Kevin Davies of the Department of Treasury's Inspector General for Tax Administration ("TIGTA"), in their official capacity, respectfully move this Court to dismiss this case for lack of jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6). In support of this Motion, Federal Defendants refer the Court to the accompanying memorandum of points and authorities. A proposed Order consistent with this Motion also is attached. Pro se Plaintiff should note that the assertions contained in the accompanying declarations and other attachments in support of Defendants' motion will be accepted by the Court as true unless Plaintiff submits her own affidavit or other documentary evidence contradicting Defendants' declarations and attachments.[1]    Because this is a dispositive motion,

---

[1] Any factual assertions contained in documents in support of this Motion must be accepted by the Court as true unless Plaintiff submits his own affidavit or other competent evidence contradicting the assertions in the documents. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Local Rules 7(h) and 56.1; and Fed. R. Civ. P. 56(e), which provides as follows:

and because Plaintiff is a *pro se* litigant, Defendants' counsel has not conferred with Plaintiff

regarding the motion.  <u>See</u> LCvR 7(m).

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
KAREN L. MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W. Rm. 4112-E
Washington, D.C. 20530
(202) 307-0338

---

When a motion for summary judgment is made and supported as provided in this
rule, an adverse party may not rest upon the mere allegations or denials of the
adverse party's pleading, but the adverse party's response, by affidavits or as
otherwise provided in this rule, must set forth specific facts showing that there is a
genuine issue for trial.  If the adverse party does not so respond, summary
judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSARIO A. FIORANI, JR.     ) | |
|     ) | |
| Plaintiff,     ) | |
|     ) | |
| v.     ) | Civil Action No. 06-739 (RWR) |
|     ) | |
| UNITED STATES OF AMERICA, et al., ) | |
|     ) | |
| Defendants.     ) | |
| _____) | |

## FEDERAL DEFENDANTS' STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

Federal Defendants respectfully submit this Memorandum of Points and Authorities in Support of the Motion to Dismiss for lack of jurisdiction, improper venue[2], and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6).

## FACTUAL BACKGROUND AND PLAINTIFF'S COMPLAINT

On September 9, 1998, Plaintiff was charged in a four-count indictment with three counts of Wire Fraud and one count of False Impersonation of an Officer or Employee of the United States. See United States v. Fiorani, Criminal Docket 98-cr-340 (attached hereto as Exhibit 1) at p. 1. On September 15, 1998, the District Court appointed Glen Allen Trimper, pursuant to the Criminal Justice Act ("CJA"), to represent Plaintiff. See Exhibit 1 at docket entry 4. The Plaintiff was arraigned on September 21, 1998, at which time he entered a plea of not guilty to all counts. See Exhibit 1 at p. 3.

---

[2] While the Court could, in its discretion, transfer this case to the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1402(b), 1404(a) and 1406(a), for the reasons set forth infra, it should be dismissed with prejudice.

On November 2, 1998, Plaintiff withdrew his not guilty plea, and entered a plea of guilty to one court of Wire Fraud (Count 2 of the indictment). <u>See</u> Exhibit 1 at p. 4. On that same date, the plea agreement and a statement of facts were filed. <u>See id.</u> at docket entries 18, 19. The Court entered an Order dismissing counts 1, 3, 4 & 5 of the indictment. <u>See id.</u> at docket entry 20. Plaintiff was sentenced on January 29, 1999. <u>See id.</u> at p. 5. The Court committed the Plaintiff to the custody of the Bureau of Prisons for sixty days, with three years of supervised release. <u>See id.</u>

On February 18, 1999 and on July 24, 2000, Plaintiff filed successive motions to vacate his sentence pursuant to 28 U.S.C. § 2255. <u>See</u> February 3, 2004, Order of District Judge James C. Cacheris (attached hereto as Exhibit 2) at 1. Both of these motions were denied. <u>See id.</u> On January 28, 2004, Plaintiff filed a "Motion for Reversal of Unconstitutional Conviction on Ineffective Assistance of Counsel, Prosecutorial and Judicial Misconduct, and Brady Violations." <u>See</u> Exhibit 1 at docket entry 82. In the Court's February 3, 2004 Order, denying Plaintiff's motion pursuant to Fed. R. Governing § 2255 P. 4(b) and 9(b), the Court noted that "[t]he motion and the files in this case conclusively show that the [Plaintiff] is not entitled to relief." <u>See</u> Exhibit 2 at 1. Plaintiff appealed the Court's Order, however, the Court of Appeals denied a Certificate of Appealability and dismissed the appeal. <u>See</u> Exhibit 1 at docket entry 87.

In the present lawsuit, Plaintiff alleges that AUSA Hackney and Mr. Trimper made false statements, committed perjury, and engaged in a series of civil and criminal conspiracies. <u>See</u> Compl. at 2. Among other things, Plaintiff alleges that "[o]n and after September 15, 1998, Trimper and Hackney engaged in a criminal and civil conspiracy to use acts of force, verbal threats, shaped coercion and acts of intimidation against Fiorani to get him to plead guilty to

crimes that never happened with District court Judge Cacheris' knowledge, acceptance and

permission, contrary to Fiorani's Constitutional Rights, under the 4th, 5th, 6th, and 14th

Amendments and Fiorani's Due Process Clause." See Compl. at ¶ 20.

Plaintiff further alleges that "[o]n November 2, 1998, Trimper and Hackney did

knowingly commit fraud on the Court before District Court Judge Cacheris, when both said

under oath, that the alleged facts in the Statement of Facts are true, correct and accurate under

Rule 11 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 1001." See Compl. at §

8(m). In addition, Plaintiff asserts that on "February 6, 1998, to after May 10, 2002, and to April

6, 2006, Trimper, Hackney, and District Court Judge Cacheris covered up, hid and permitted

perjury and false statements to be made in the IRS's search warrant affidavit, in paragraph 10."

See Compl. at ¶ 8(n). Lastly, Plaintiff accuses Mr. Trimper and AUSA Hackney of engaging "in

a conspiracy to not challenge, dispute, raise, appeal and to keep Fiorani from ever reading,

disputing, challenging, and appealing his fabricated, manufactured and concocted criminal

conviction." See Compl. at ¶ 22.[3] As a result of this alleged misconduct, Plaintiff is seeking

damages in the amount of three million dollars ($3,000,000.00). See Compl. at 15.

## ARGUMENT

### I.     Plaintiff Fiorani's Complaint Is Frivolous And Should Be Dismissed

#### A.  12(b)(1) And (6) Standards For Dismissal

As the District Court stated in its Memorandum Opinion in Delaine v. United States,

---

[3]  With respect to the TIGTA agents, Plaintiff claims that they "repeatedly and unlawfully or unconstitutionally denied allowing Fiorani speak to his father, verifying Fiorani never got his Miranda warning and was held for nearly six (6) hours in handcuffs during the IRS agent's in-custodial interrogations . . ." See Compl. at § 8(f).

Assistant Attorney for the District of Columbia, et al., Civil Action No. 04-872 (GK):

> Pursuant to Federal Rule of Civil Procedure 12(b)(1), "a court [in its discretion] may dismiss a patently frivolous claim for lack of subject-matter jurisdiction." Hilska v. Jones, 297 F.Supp 2d 82, 87 (D.D.C. 2003). See Hagans v. Lavine, 415 U.S. 528, 536 (1974) ("federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit") (internal quotation omitted). "Patently frivolous" claims include those premised on "bizarre conspiracy theories," "fantastic government manipulations of the[] will or mind," or "any sort of supernatural intervention." Best v. Kelly, 39 F.3d 330-31 (D.C. Cir. 1994) (describing as frivolous a complaint which alleged that "a Secret Branch of the Federal Government" took plaintiff's face off his head, went into his skull, and placed a computer chip and camera system there to project images in front of him). "Under settled law, the [d]istrict [c] may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1) on the complaint standing alone." Herbert v. Nat'l Acad. of Sciences, 974 F2d 192, 197 (D.C. Cir. 1992).

See Memorandum Opinion (attached hereto as Exhibit 3) at 4.

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and dismissal is appropriate where the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Browning v. Clinton, 292 F.3d 235, 241 (D.C. Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court is to treat the complaint's factual allegations as true, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir.1979). However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C.

Cir. 1996) and <u>Kowal v. MCI Communication Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). In

determining whether a complaint fails to state a claim, the Court may consider only the facts

alleged in the complaint, any documents either attached to or incorporated in the complaint and

matters of which it may take judicial notice. <u>See</u> <u>E.E.O.C. v. St. Francis Xavier Parochial Sch.</u>,

117 F.3d 621, 624-625 (D.C. Cir. 1997). _____

### B.  This Court Lacks Jurisdiction To Hear Plaintiff's Frivolous Claims

Plaintiff does not allege any *facts* that would support a claim against the United

States Department of Justice, AUSA Hackney, or the TIGTA agents. Essentially, he claims that

AUSA Hackney conspired with Mr. Trimper to (1) coerce Plaintiff to sign an inaccurate

Statement of Facts, resulting in Plaintiff's conviction and incarceration, and (2) keep all material

evidence of their alleged conspiracy from Plaintiff. Plaintiff's claims should be dismissed

because they are "patently frivolous." <u>Hilska</u>, 297 F.Supp 2d at 87.

The courts have inherent authority to dismiss as frivolous claims that are inherently

incredible. <u>Fitzgerald v. First East Seventh Tenants Corp.</u>, 221 F.3d 362 363-64 (2d Cir. 2000)

(District courts may dismiss a frivolous complaint even if plaintiff has paid the filing fees). The

courts have unhesitatingly dismissed claims that are utterly fantastic or inherently incredible.

<u>Bloom v. United States</u>, 2003 WL 22327163 at *(8 (S.D.N.Y. Oct. 10, 2003) (court dismissed as

"clearly baseless"plaintiff's claims that government agents conspired to drug him and that the

government did not compensate him for drafting literature for the Clinton/Gore Presidential

Campaign); <u>Tyler v. Carter</u>, 151 F.R.D. 537, 538-40 (S.D.N.Y 1993) (dismissing as frivolous

plaintiff's claims that the federal government placed listening devices in her college dormitory,

had other students follow and ostracize her, and blasted her with rock music designated for witch

hunts as part of a conspiracy to reinstate slavery). Accordingly, this Court should dismiss plaintiff's claims as inherently incredible.

## II.    Plaintiff's Claims Against the United States Are Jurisdictionally Barred By the Doctrine Of Sovereign Immunity

Even if the Plaintiff's far-fetched claims were cognizable claims, the doctrine of sovereign immunity bars all suits against the United States except where such immunity is expressly waived by Congress. See United States v. Testan, 424 U.S. 392, 399 (1976). The sovereign immunity of the United States protects it and its agencies from suit absent an express waiver. See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994); United States v. Nordic Village, 503 U.S. 30, 33-34 (1992) (waivers must be "unequivocally expressed"); United States v. Mitchell, 445 U.S. 535, 538 (1980); Information Sys. & Networks Corp. v. United States Department of Health & Human Servs., 970 F. Supp. 1, 3 (D.D.C. 1997) ("Defendants, as federal agencies, are immune from suit unless the government has expressly waived that immunity.") (citation omitted).

Sovereign immunity is jurisdictional. As the Supreme Court has recognized, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); see also Alexander v. Americans United, Inc., 416 U.S. 752, 767 n.5 (1974) (Blackmun, J., dissenting). When a plaintiff seeks monetary relief for torts against the United States or a department of the United States, the only possible basis for relief is under the FTCA. The FTCA authorizes district courts to hear suits against the United States

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the

6

> Government while acting within the scope of his office or employment, under
> circumstances where the United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act or omission
> occurred.

28 U.S.C. § 1346(b); see also Cope v. Scott, 45 F.3d 445, 447 (D.C. Cir. 1995). Here, Plaintiff

has not articulated a cognizable claim under the FTCA, and instead alleges a nebulous conspiracy

theory that must be dismissed under principles of sovereign immunity.

Even if the Court determines that Plaintiff has raised a cognizable FTCA claim, it too

must be dismissed for Plaintiff's failure to administratively present his claim. Absent full

compliance with the conditions placed upon the FTCA's waiver of sovereign immunity, the

Court lacks jurisdiction to entertain claims against the United States. GAF Corp. v. United

States, 818 F.2d 901, 916 & n.86 (D.C. Cir. 1987). One such condition is contained in 28 U.S.C.

§ 2675, which provides, in part:

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his employment, unless the claimant shall have first
> presented the claim to the appropriate Federal agency and his claim shall have
> been finally denied by the agency in writing and sent by certified or registered
> mail. The failure of an agency to make final disposition of a claim within six
> months after it is filed shall, at the option of the claimant any time thereafter, be
> deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a); see also GAF Corp., 818 F.2d at 904 n.7.

Similarly, an action cannot be maintained under the FTCA where the complaint is filed

before such an administrative claim is finally denied or six months have passed. McNeil v.

United States, 508 U.S. 106, 113 (1993). This presentment requirement is "unambiguous" and

courts are "not free to rewrite the statutory text." Id. at 111. Further, the requirement is

7

jurisdictional and cannot be waived.  Hohri v. United States, 782 F.2d 227, 245-46 (D.C. Cir.

1986), reh'g denied, 793 F.2d 304 (D.C. Cir. 1987), rev'd on other grounds sub nom., United

States v. Hohri, 482 U.S. 64 (1987).  See also Simpkins v. District of Columbia Government,

108 F.3d 366, 370-71 (D.C. Cir. 1997) (district court has no jurisdiction to consider the merits of

an FTCA suit once it determines that plaintiff has failed to file an administrative claim).

Because Plaintiff has not alleged that he has presented his claim to any executive branch agency,

he has failed to assert facts that would state a claim within the jurisdiction of this Court.  See

Johnson v. DiMario, 14 F. Supp.2d 107, 111 (D.D.C. 1998).  Thus, Plaintiff's claim should be

dismissed for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).[4]

     A..   Alleged violations of Federal criminal statutes.

     Plaintiff claims that Defendants violated a litany of Federal criminal statutes.  See Compl.

at 2, 8 (18 U.S.C. §§ 1331, 1332, 1343(a),1001, 3006A, 1985).  As explained above, the Federal

government is subject to suit only where Congress explicitly has waived its sovereign immunity.

The express terms of the Federal criminal statutes Plaintiff cites in his Complaint do not waive

---

   [4] An alternative, but equally compelling, basis for dismissing any claims under the FTCA
is Plaintiff's failure to present the claim to any federal agency within two years after the accrual
of the claim.  Pursuant to 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be
forever barred unless it is presented in writing to the appropriate Federal agency within two years
after such claim accrues . . . ."  Compliance with the statute of limitations is a condition of
federal court jurisdiction.  See Kendall v. Army Bd. for Correction of Military Records, 996 F.2d
362, 366 (D.C. Cir. 1993); Hoffmann v. United States, 53 F. Supp. 2d 483, 494 (D.D.C. 1999).

   Plaintiff filed the Complaint in May, 2006.  However, he refers to events dating back to
1998.  Compl. at ¶ 8(m) (alleged fraud before District Court Judge Cacheris on November 2,
1998).  Since a tort claim against the United States is barred unless an administrative claim is
presented in writing to the appropriate federal agency within two years after the claim accrues, 28
U.S.C. § 2401(b), here any claims accruing prior to May 1, 2004 are barred by the statute of
limitations and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

the Federal government's immunity from civil lawsuit. Instead, by their very terms, the statutory provisions criminalize certain conduct and allow the Federal government to prosecute violations of those provisions. See, e.g., Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352 (6th Cir. 1996) (no private right of action for violation of Federal criminal statute).

      B.    Plaintiff's allegations concerning alleged Constitutional violations.

Plaintiff's references to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution suggest that his Complaint is intended to allege constitutional violations. See Compl. at 2. If so, those claims should be dismissed for lack of subject matter jurisdiction on grounds of sovereign immunity. As previously explained, the United States enjoys immunity from suit except where it has expressly consented to be sued, FDIC v. Meyer, 510 U.S. 471, 474 (1994), and that consent cannot be implied but must be express. Nordic Village, Inc., 503 U.S. at 33-34; United States v. Mitchell, 445 U.S. 535, 538 (1980). The United States has not waived its sovereign immunity from suits seeking monetary damages for alleged violations of the Constitution. Meyer, 510 U.S. at 477. Thus, the government's sovereign immunity bars the claims that the United States violated Plaintiff's constitutional rights.

      C.    The Civil Rights Statutes do not provide a cause of action against the Federal government.

At page 2, Plaintiff cites 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights"). 42 U.S.C. § 1985 does not waive the United States' sovereign immunity. Vincent v. HHS, 600 F. Supp. 110, 111 (D. Nev. 1984) (citations omitted), affirmed, 794 F.2d 683 (9th Cir. 1986). Section 1985 explicitly extends liability to "persons." 42 U.S.C. § 1985(3). It is settled that the United States is not a "person" subject to suit under Section 1985. Proffitt v. United States, 758

F. Supp. 342, 344-45 (E.D. Vir. 1990) (citations omitted).  Similarly, the Civil Rights Statutes do not apply to federal officials acting under color of federal law.  See, e.g., Abramson v. Bennett, 707 F. Supp. 13, 16 (D.D.C. 1989), aff'd, 889 F.2d 291 (D.C. Cir. 1989) ("Section 1983 only applies to state officials acting under color of state law," not to federal officials acting under color of federal law); see also Heck v. Humphrey, 512 U.S. 477 (1994) (stating that Section 1983 provides access to a federal forum for claims of unconstitutional treatment at the hands of state officials).

The Defendants in this case are employees of various Federal agencies, who appear to be sued in their official capacities for the alleged conduct of their respective agencies.  It is well-settled that suits against government employees in their official capacity are, in effect, suits against the sovereign.  Hutchinson v. United States, 677 F.2d 1322 (9th Cir. 1982); McKnight v. Civiletti, 497 F.Supp. 657 (E.D. Pa. 1980).  In addition, Plaintiff fails to allege that the purported Constitutional deprivations to which he claims he has been subjected were motivated by racial animus, which is another prerequisite for a suit under the Civil Rights Statutes.  See 28 U.S.C. § 1343.

It is clear that the United States has not consented to be sued under the Civil Rights Statutes.  Courts have held that the statutory provisions of the Civil Rights Statutes do not create substantive rights and thus subject matter jurisdiction; they merely serve as procedural devices for enforcing substantive provisions of the Constitution and federal statutes.  See, e.g., Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) (concerning 42 U.S.C. § 1983).  The jurisdictional section corresponding to the Civil Rights Statutes is 28 U.S.C. § 1343, which applies only to suits seeking redress for deprivations of federal rights under color of *state* law and

10

thus does not waive the federal government's sovereign immunity.  <u>Vincent</u>, 600 F. Supp. at 111.

## III.  AUSA Hackney Has Absolute Prosecutorial Immunity

Furthermore, were Plaintiff's claims cognizable, AUSA Hackney would be shielded by absolute prosecutorial immunity.  The Supreme Court has long recognized an absolute immunity for prosecutors from personal liability for actions related to the performance of their public duties.  <u>See</u>, <u>e.g.</u>, <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993); <u>Yaselli v. Goff</u>, 275 U.S. 503 (1927).  In <u>Yaselli</u>, the Court held that a prosecutor could not be sued for malicious prosecution.  Later, in <u>Imbler v. Pachtman</u>, 424 U.S. 409, 420 (1976), the Supreme Court held that this absolute immunity barred constitutional tort claims.  The Court reasoned:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

<u>Id.</u> at 422-23.  The Court also stressed that there were substantial checks against abuse.  Aside from the prospect of criminal sanctions for willful deprivations of constitutional rights, "a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers." <u>Id.</u> at 429.

The prosecutor's immunity extends to any activities that are "intimately associated with the judicial phase of the criminal process." <u>Id.</u> at 430.  This includes "initiating a prosecution" and "presenting the . . . case." <u>Id.</u> at 431.  Indeed, the Supreme Court has reiterated this concept

11

in <u>Burns v. Reed</u>, 500 U.S. 478 (1991), wherein it held that a prosecutor is entitled to absolute immunity for participating in a probable cause hearing which led to the issuance of a search warrant. The Court's opinion in <u>Imbler</u> leaves no doubt about its intent to cloak <u>all</u> advocatory functions with immunity:

> [S]uits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, and--ultimately in every case--the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions.

Id. at 425; <u>accord</u> <u>Burns v. Reed</u>, 500 U.S. at 492.

Courts have applied immunity to cloak every aspect of the criminal prosecution, from grand jury proceedings to plea bargains and appeals. Absolute immunity has been held to apply to presenting evidence before a grand jury, <u>Morrison v. Baton Rouge</u>, 761 F.2d 242, 247-48 (5th Cir. 1985); <u>see</u> <u>Burns v. Reed</u>, 500 U.S. at 490 and n.6; to reckless prosecution based on inadequate investigation, <u>Wahl v. McIver</u>, 773 F.2d 1169, 1173 (11th Cir. 1985); threatening criminal prosecution, <u>Myers v. Morris</u>, 810 F.2d 1437, 1446 (8th Cir. 1987); <u>Burns v. Reed</u>, <u>supra</u>; advocating a position on bail, <u>Lerwill v. Joslin</u>, 712 F.2d 435, 438-39 (10th Cir. 1983); striking a deal with defense counsel to obtain evidence, <u>Krohn v. United States</u>, 742 F.2d 24, 30 (1st Cir. 1984); destruction and falsification of evidence, <u>Heidelberg v. Hammer</u>, 577 F.2d 429, 432 (7th Cir. 1978); securing the attendance of witnesses and the accused at trial, <u>Hamilton v. Daley</u>, 777 F.2d 1207, 1213 (7th Cir. 1985); solicitation and subordination of perjured testimony, <u>Taylor v. Kavanagh</u>, 640 F.2d 450, 452 (2nd Cir. 1981); introduction of illegally seized evidence,

Taylor, 640 F.2d at 452; agreeing to dismiss charges in return for dropping civil action,

McGruder v. Necaise, 733 F.2d 1146, 1148 (5th Cir. 1984); and misconduct in the plea

arrangement process, Myers v. Morris, 810 F.2d 1437, 1446 (8th Cir. 1987).

Indeed, the Court of Appeals in this Circuit has concluded that absolute immunity bars,

*inter alia*, claims that prosecutors failed to present exculpatory evidence to grand jury and did

present false testimony.  See Gray v. Bell, 712 F.2d 490, 494, 502 (D.C. Cir. 1983).  That Court

has also held that prosecutorial immunity protects the prosecutor from liability for allegedly

concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence

before the grand jury, as well as for allegedly withholding after indictment material evidence that

is exculpatory.  Moore v. Valder, 65 F.3d 189, 192-94 (D.C. Cir. 1995), cert. denied, Valder v.

Moore, 519 U.S. 820 (1996).

In this action, Plaintiff's conspiratorial allegations against AUSA Hackney are not only

frivolous and without basis in demonstrated fact, but fall clearly within the broad and absolute

immunity of an Assistant United States Attorney delineated in the above cases.

**IV.    Defendant Is Also Entitled To Qualified Immunity.**

Even if the Court were to hold that AUSA Hackney was not entitled to absolute

immunity, both he and the TIGTA agents are entitled to qualified immunity.  Plaintiff has failed

to state a claim against Defendant in his individual capacity under Bivens v. Six Unknown

Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  Such federal officers enjoy

qualified immunity from constitutional and statutory claims.  Cleavinger v. Saxner, 474 U.S.

193, 206 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Government officials are

shielded from liability for civil damages insofar as their conduct does not violate clearly

13

established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818; Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998); see also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery").  In other words, in order for a person to have a clearly established right, the right must also be sufficiently clear such that any reasonable government employee should have known they were violating the Constitution.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).

This Circuit has established a two-prong test in reviewing the applicability of the qualified immunity defense.  First, courts must look at whether "the facts show the officer's conduct violated a constitutional right." Lederman v. United States, 291 F.3d 36, 46 (D.C. Cir. 2002)(citations omitted).  Defendants are only liable "if they knew, or were unreasonable in not knowing, that their behavior violated the Constitution." Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991).

Second, the court must determine whether the right was clearly established.  See Butera v. District of Columbia, 235 F.3d 637, 652 (D.C. Cir. 2001)(holding that in order to assess whether a particular right is sufficiently established to place a defendant on notice that his conduct was unconstitutional, the court must look to decisions of the Supreme Court, the District of Columbia Circuit, and to the extent there is a consensus, other circuits [that] have clearly spoken on the lawfulness of the conduct at issue").  In this case, AUSA Hackney and the TIGTA agents violated no statutory or constitutional right of Plaintiff.  AUSA Hackney and the TIGTA agents are shielded from liability for civil damages because Plaintiff's allegations fail to state a claim for

14

any violation of clearly established law.

**V.    Plaintiff May Not Recover Damages For Alleged Unconstitutional Conviction Unless He First Proves That Conviction Has Been Invalidated**

In this Circuit, it is well-settled that a plaintiff may not maintain an action indirectly challenging the validity or duration of his criminal conviction until he first prevails in an action invalidating that conviction. In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

This directive was applied in Hazel v. Reno, 20 F. Supp. 2d 21 (D.D.C. 1998). In that case, plaintiff claimed "no injury distinct from his conviction. The 'extra-judiciary' conspiracy that Hazel envisions and the specific overt acts that allegedly furthered the conspiracy all center on the validity of his conviction." Hazel, 20 F. Supp. 2d at 24. The Hazel Court stated that "were a judgment to be granted in Hazel's favor in the case at bar, it 'would necessarily imply the invalidity of his conviction.'" Hazel at 24 (quoting Heck at 487). See also Robinson v. Ashcroft,

357 F. Supp. 2d 142,145 (D.D.C. 2004) (holding that plaintiff's claim of ineffective assistance of counsel from his court-appointed attorney was barred by <u>Heck</u> because "plaintiff's success on the merits would implicitly question the validity of the conviction").

In this case, as in <u>Hazel</u>, a ruling in favor of Plaintiff would "necessarily imply the invalidity of his conviction." <u>See Heck</u>. 512 U.S. 477 at 486. Moreover, "although the <u>Heck</u> case involved the application of § 1983 actions, its holding is not limited to that type of case alone." <u>Robinson v. Ashcroft</u>, 357 F. Supp. 2d at 145. As the court observed in <u>Hazel</u>, "<u>Heck</u> does not rest on statutory language, legislative history, comity, or any other consideration unique to actions under 42 U.S.C. § 1983. It rests instead on the need for finality of criminal convictions and on the analogy between actions under § 1983 and the common law of malicious prosecution, which barred the suit unless the criminal prosecution ended in the plaintiff's favor." 20 F. Supp. 2d at 24 (citation omitted). Therefore, although Plaintiff in this case relies upon various statutes in his effort to avoid <u>Heck</u>'s preclusive rule, his complaint is still barred because "to permit [the Plaintiff] to prosecute this civil action would merely vest him with [a] collateral opportunity to impugn the legitimacy of his conviction." <u>Hazel</u> at 24.

## CONCLUSION

Based upon the foregoing, Defendants respectfully move that its motion to dismiss Plaintiff's Complaint for lack of jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

16

Respectfully submitted,

_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
KAREN L. MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 4th Street, N.W. Rm. E 4112
Washington, D.C. 20530

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Federal Defendants' Motion to

Dismiss has been made via Electronic Case Filing and/or mail to plaintiff, Mr. Rosario A.

Fiorani, Jr., 7115 Latour Court, Kingstowne, VA.  22315, on July 31, 2006.


_____
KAREN L. MELNIK D.C. BAR #436452
Assistant United States Attorney
U.S. Attorney's Office for the    District of
Columbia
Civil Division
555 Fourth Street, N.W. #4112
Washington, D.C. 20530
(202) 307-0338(O)
(202) 514-8780 (Fax)

18