Agurs, 427 U.S. 97, 103, (1976), ("[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use(s) of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." (Internal citations omitted); Napue, 360 U.S. at 269 ("[A] conviction obtained through uses of false evidence, known to be such by represenatives of the State, must fall under the Fourteenth Amendment.") (citations omitted); Mooney v. Holohan, 294 U.S. 103, 112 (1935) (condemning "deliberate deception of court and jury by the presentation of testimony known to be perjured." Cf. Brady, 373 U.S. at 87, (noting that nondisclosure by a prosecutor violates due process when he/she suppresses evidence material to innocence or guilty.). All these relate direct to and are specifically relevant to TRIMPER'S –knowingly refusing to challenge, contrary to his 'silent agreements' with CACHERIS and HACKNEY to get a forced, threatened, intimidated plea, not just once, before November 2, 1998, but again before and on July 15, 2000. The next time TRIMPER was –ORDERED TO REPRESENT PLAINTIFF–. (Pltf's. Exh. C-2) The other serious questions regard TRIMPER'S acting as an agent for the Government, against his court-appointed client consists of, Did TRIMPER perform any criminal defense investigations? Did TRIMPER do all he could do for his client under the above Circuit Courts' and Supreme Court rulings, or the Constitution? Did TRIMPER perform and do them under the Constitutional protection he is required to perform them?

The answer here is a resounding "NO." TRIMPER did not do anything that he was required to do under the Due Process Clause of the U.S. Constitution, nor in compliance with the Bill of Rights, where TRIMPER. HACKNEY and Judge CACHERIS', who court-appointed TRIMPER to represent Plaintiff "is not immune from liability brought by a criminal defendant who did conspire with, collaborate and obstruct justice with several governmental officials, in their

official capacities, under color of law, to purposely deprive Plaintiff of his federal constitutional rights. Tower, p. 916.

Plaintiff's evidence, facts, exhibits and THIRD-PARTY documents clearly show TRIMPER never did anything that he was lawfully or constitutionally to do under various Circuit Courts' and Supreme Court cases, *supra*. TRIMPER was totally defective in his representation of Plaintiff. TRIMPER did engage in a provable criminal conspiracy under 18 U.S.C. § 371, or did in ways engage in a criminal conspiracy with HACKNEY, with District Court Judge CACHERIS' permission, acceptance and knowledge on and after November 2, 1998.

TRIMPER has repeatedly falsified, under penalties of perjury, to a number of other Courts, under oath, as the VSB said, when TRIMPER told this Court his last day of representation of Fiorani was January 29, 1999. But it was found in at least two of the Government's own updated District Court's docket sheets that no Judge had ever allowed nor issued and mailed out an Order dismissing TRIMPER from any of Plaintiff's criminal case appeals, as the attorney of record, before May 10, 2002. That is a factually specifically reason why and under what purpose(s) § 1983, 'under color of law' was enacted to aid and assist persons who's civil rights are violated by the collusion and conspiracy of a court-appointed defense attorney and governmental officials, acting in the capacity of their duties, position, while abusing their powers and authority, as has happened with HACKNEY and District Court Judge CACHERIS. Plaintiff's fact-specific evidence includes TRIMPER'S and HACKNEY'S engaged conspiracy to write a knowingly deceptive, intentionally false plea agreement and Statement of Facts, (SOF) on October 31, 1998, (Pltf's Exh. N-15, #8). Then keep Plaintiff from --ever reading, disputing, challenging or overruling their plans– to get Plaintiff through joint acts using "verbal" force, "physical" threats, "telephone" harassment committed by TRIMPER and with HACKNEY'S and CACHERIS' knowledge, consent and permission from which the

23

unconstitutional plea agreement and signed SOF took place before Judge CACHERIS on November 2, 1998. See. Fed. R. Cr. P., Rule 11; See also <u>Bousley v. U.S.</u>, 523 U.S. 614 (1998)[10], ("The distinction between substance and procedure is an important one in the habeas context . . .[is] to insure that no man has been incarcerated under a procedure which creates an impermissibly large risk [] the innocent will be convicted.'") <u>489 U.S., at 312.</u> See also (Pltf's Exh. C-4). TRIMPER was the attorney to nearly 295 victims who were forced, threatened, and coerced to plead guilty before an already corrupt[11] District Judge CACHERIS. CACHERIS was found to be extremely bias, prejudiced, and CACHERIS showed discrimination against Plaintiff, when Plaintiff is constitutionally entitled to all exculpatory facts, evidence, documents, and copies of all information that could exonerate Plaintiff.

Those alleged hearing tapes, (voice) tapes would prove all of what Plaintiff has been saying all along of his innocence. Many of CACHERIS' unconstitutional Orders and Rulings were deliberately issued for a sole purpose of keeping Plaintiff from ever reversing his "wrongful

---

[10]. By contrast, decisions . . . "'beyond the power of the criminal lawmaking authority to prescribe," *id.*, at 311. (quoting <u>Mackey</u>, *supra*, at 692), necessarily carry a significant risk that a defendant stands convicted of, "an act that the law does not make criminal." <u>Davis v. United States</u>, 417 333, 346 (1974). "He is not arguing [] his guilty plea was not intelligent, but rather that it was not intelligently made because the information provided him by the District Judge at his plea colloquy was erroneous." This type of claim can be fully and completely addressed on direct review based on the record created at the plea colloquy. . . "cause" and actual "prejudice", <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977), (. . .or that the defendant is "actually innocent."); <u>Murray</u>, *supra.*, at 496; <u>Smith v. Murray</u>, 471 U.S. 527, 537 (1986), See <u>Bousley</u>, at Pp. 622-623.

<u>United States v. Bradley</u>, ___ F.3d ___ (4th Cir. July 25, 2006); (As the Government properly concedes, the record indisputably reflects this participation and encouragement. . . .adversely affected their substantial rights and because we conclude that the error seriously affects the fairness, integrity, and public reputation of judicial proceedings, we must vacate the judgment, and remand . . ." Motz, Circuit J.

plea" and unconstitutional conviction on those Orders and Rulings that have also prevented

Plaintiff from ever getting any fair hearings, trial or rehearing. The exculpatory evidence is still

being held by the Government, violating Plaintiff's Constitutional Rights are under CACHERIS'

sole control, by his blocking, hindering and preventing Plaintiff from getting the (actual) grand

jury transcripts. Plaintiff's three grand jurors, as THIRD-PARTY witnesses and Plaintiff can

prove or show there were materially false statements, deliberate perjuries made in the grand jury

under the supposedly watchful eyes of CACHERIS. Jenkins v. Artuz, (citations omitted). ". .

.false testimony of witness at trial and state attorney's conduct violated petitioner's right to due

process; and . . .due process violation affected . . .conviction.").

CACHERIS knew and had known after November 2, 1998 that HACKNEY had at least

12 false and materially untrue statements in the Statement of Facts, (SOF), along with his

altering documents used in the grand jury, per interviews with the grand jury forewoman. Those

interviews were told to Plaintiff's investigator, (or USADAG TSONOFF) that HACKNEY,

MINARD, WANAT and DAVIES committed perjury, knowingly made false statements while they

were engaging in a criminal conspiracy. United States v. Cintolo, 818 F.2d 980, (1st Cir. 1987),

(Whatever contours of a line between a traditional lawyer and a corrupt intent may be, they must

inevitably be drawn case by case for purposes of determining whether an attorney has conspired

to obstruct justice.")

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT UNDER 12(b)(6).

The Supreme Court held in Buckley v. Fitzsimmons, et al, 509 U.S. 259 (1993),

[w]e make two important assumptions about the case: first, that Plaintiff's allegations are entirely
true; and, second, that they allege constitutional violations for which § 1983 provides a remedy."
(Stevens, J.). The Supreme Court held in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "1. It
was error to dismiss the complaint for WANAT of jurisdiction. Pp. 44-45. 3. The
    complaint adequately set forth a claim upon which relief could be granted. Pp. 45-
    48. (b) Failure of the complaint to set forth specific facts to support its general
    allegations . . .was not a sufficient ground for dismissal of the suit, since the
    Federal Rules of Civil Procedure do not require a claimant to set out in detail the
    facts upon which he bases his claim. Pp. 47-48.

25

In <u>Celetex v. Catrett</u>, 477 U.S. 317 (1986), "1. The Court of Appeals' position is inconsistent with the standard for summary judgment set forth in Rule 56(e), which provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue(s) as to any material fact and that the moving party is entitled to judgment as a matter of law." Pp. 322-326. (Reversing the U.S. Court of Appeals for the District of Columbia Circuit.).

See. <u>Hartford Fire Ins. Co. v. California</u> 113 S.Ct. 2891, 2917 (1993); <u>Neitzke v. Williams</u>, 109 S.Ct. 1827, 1832 (1989), ("Rule 12(b)(6) does not countenance . . .dismissals based on a judge's disbelief of a complaint's factual allegations."). <u>Kingsman Park Civil Ass'n. v. Williams</u>, 348 F.3d 1033 (D.C. Cir. 2003). ("on a 12(b)(6) motion, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim, would entitle him to relief. . .").

The Government's Motion to Dismiss under the Federal Rules of Civil Procedure, Rule

12(b) must fail where Plaintiff's complaint does state claims from which relief can be granted,

adverse to the Federal Rules of Civil Procedure, Rule 12(b)(6), accepting the truth of a well-

pleaded factual allegations of the complaint.

## STANDARD OF REVIEW AGAINST DEFENSE(S) OF IMMUNITY

Plaintiff relies on the Supreme Court's holding in <u>Bivens v. Six Unknown Named</u>

<u>Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) and its progeny.  The Supreme

Court held in  <u>Groh v. Ramirez, et al</u>, 540 U.S. 551 (2004). "The search was clearly "unreasonable" under the Fourth  Amendment. Pp. 557-563.  (a) The warrant was plainly invalid.  It did not meet the Fourth Amendment's unambiguous requirement that a warrant "particularly describe] . . .the persons or things to be seized." . . . shall not be violated. . . ."  Fourth Amendment interests are not necessarily vindicated when another document says something about the objects of the search, but that document's contents are neither known to the person whose home is being searched nor available for her inspection. (quoting, <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388;  and 42 U.S.C. § 1983; and <u>U.S. v. Leon</u> 468 U.S. 897 (1984), (precluded qualified immunity for petitioner because he was the leader of a search who did not read the warrant and satisfy himself that he understood the scope and limitations. and that it was not obviously defective.); quoting <u>Bell v. Hood</u>, 327 U.S. 678 (1946). "We reserve the question whether violation of that command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct.  Today, we hold that it does."

In <u>United States v. Gonzalez-Lopez</u>, 546 U.S. (June 26, 2006). The Court held, "A trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to reversal of his conviction." Pp. 3-12.) (Quoting, <u>Strickland v. Washington</u>, 466 U.S. 668, 691-696, (1984), "that his [counsel's] performance was deficient and the defendant was prejudiced by it—or the defendant can demonstrate that substituted counsel's performance . . .was not as good as what his counsel of choice's would have provided, created a 'reasonable probability that . .the result would have been different," *id.*, at 694. <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2000), asserts that a trial is not unfair unless a defendant has been prejudiced. The right to counsel of choice, however, commands not that a trial be fair, but that a particular guarantee of fairness be provided– to wit, that the accused be defended by the counsel he believes to be best. *Cf.* <u>Crawford v. Washington</u>, 541 U.S. 36, 61 (2004). "That right was violated here; no additional showing of prejudice is required to make the violation "complete." Pp. 3-7.

The Government's Motion to Dismiss and seeking to rely on 'governmental' immunities must fail pursuant to the Civil Rights Act of 1871 and 1964, that reads in pertinent parts, and applies to federal agents or law enforcement officer under *§ 1983*, granting relief to any (every) person, under "color of law", who subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law. . ."

Plaintiff submits overwhelming facts, evidence, 'exhibits' and other THIRD-PARTY information gotten from interviews from the three (3) grand jurors that show and clearly prove the two (2) Government agents, John WANAT, Kevin DAVIES and HACKNEY were directly involved in those many Constitutional and Civil Rights violations that have deprived and severely prejudiced Plaintiff. This, where the Government's supervisors knew, and were made aware their employees did engage in a criminal conspiracy under 18 U.S.C. § 371[12]. That 'criminal'

---

[12]. 18 U.S.C. § 371, Conspiracy to commit offense or to defraud United States. "It two or more persons conspire either to commit any offense against the United States, or to defraud United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more that $10,000 or imprisoned (for) not more than five (5) years, or both."

Elements of Conspiracy; Common design; purpose, or object; Coconspirators "agreed to violate money laundering statute, even where one believed money came from narcotics while other believed it came from gambling, since so long as unlawful sources was proven to be born of enumerated illegal activities in statute, it was not essential that conspirators agreed on same illegal activities. <u>United States</u>

conspiracy was also engaged in and joined by Glen TRIMPER, Plaintiff's court-appointed

attorney under CJA § 3006A.

Subsequently, the U.S. Supreme Court ruled in <u>Brosseau v. Haugen</u>, (citations omitted)

(2004), (Ginsberg, J., concurring, with Breyer and Scalia, J.J.), It forces courts to reach out and

decide difficult and complex questions of Constitutional law that might easily be avoided by

resorting first to a simpler question of immunity."). On these rulings and holdings by the

Supreme Court, the Government's Motion to Dismiss and their defenses of immunity must fail

where Plaintiff's complaint does properly state a case from which a remedy can be obtained,

when the Court reviews the Complaint in light most favorable to Plaintiff.

The standard of review against a Government's defense of immunity is held by Circuit

Courts and the Supreme Court, holding –a Plaintiff can prevail against a Governmental entity, a

---

v. Stavroulakis, 952 F.2d 686 (2nd Cir. 1992); <u>United States v. Dowlin</u>, 408 F.3d 647 (10th Cir. 2005).

Circumstantial evidence of agreement. "There is no requirement that agreement be expressed, but rather secret nature of conspiracy is in most instances requires trier of fact to infer its existence from surrounding circumstances." <u>United States v. Hartley</u>, 678 F.2d 961 (11th Cir. 1982); See also <u>United States v. Messerlian</u>, 832 F.2d 778 (3rd Cir.1987); (Agreement required to prove conspiracy under 18 U.S.C. § 371 ned not be written, spoken or expressed, since all that is required is evidence of tacit agreement that may be inferred after such consideration of all circumstances.")

"Charge of conspiracy to violate laws of United States by depriving prisoner of rights under 14th Amendment [Const. Amend. 14] under color of [law] state authority was proved where evidence showed that police officials took prisoner to scene of alleged murder and placed locks around . . . in order to force him to confess to murder. <u>Apodaca v. United States</u>, 188 F.2d 932 (10th Cir. 1951).

**Obstruction of Justice**, 18 U.S.C. § 1503, "In order to sustain a conviction for conspiracy to obstruct justice under 18 U.S.C. § 371, the Government need not always show that judicial proceeding existed at time defendants formed conspiracy, but must demonstrate that actions conspirators agreed to take were directly intended to prevent or otherwise obstruct processes of specific judicial proceedings in what that was more than merely speculative; Agreement to draw up and assert veracity of false document was insufficient to ground conspiracy to obstruct justice charge." <u>United States v. Vaghela</u>, 169 F.3d 729 (11th Cir. 1999).

**False representation**, "Under 18 U.S.C. § 371, offense is made out even though primary objective of fraudulent representation is concealment of another crime; Thus, in prosecution of jockeys who had fixed a race and employed codefendants . . . that their primary purpose is having codefendants attempt to cash tickets was to conceal fact that race had been fixed did not preclude conviction for conspiring to make false and fraudulent representations to Internal Revenue Service." <u>United States v. Walsh</u>, 544 F.2d 156 (4th Cir. 1976). "Conspiracy to Obstruct Justice by perjury was offense without reference to whether perjury was consummated." <u>Outlaw v. United States</u>, 81 F.2d 805, (5th Cir. 1936).

state or federal officer, judge[13], prosecutor and court-appointed (defense) attorney, acting under

"color of law", or is a private person at the time of the constitutional violation. Where that person

is a law enforcement officer, he either knew that his actions would violate a constitutional right

that was in place before, or at the time of the officer's illegal or unconstitutional act was

committed against the Plaintiff, or he was made aware of it after the unconstitutional act was

committed, but the agency did not correct the act(s) of the officer after the unconstitutional act.

"The relevant dispositive inquiry is whether it would be clear to a "reasonable" officer that

the conduct was unlawful in the situation he confronted." See. Malley v. Briggs, 475 U.S. 335,

341 (1986); (Qualified immunity [only] protects "all but the plainly incompetent or those who

knowingly violate the law. . . "We acknowledge that there was some 'surface appeal" to the

argument that, because the Fourth Amendment's guarantee was a right to be free from

"unreasonable" searches and seizures, it would be inconsistent to conclude that an officer who

acted unreasonably, under constitutional standards, nevertheless is (was) entitled to immunity

because he "reasonably acted" unreasonably." 433 U.S., at 643.

> In U.S. v. Leon, 468 U.S. 897 (1984), (precluded qualified immunity for petitioner because he was the leader of a search who did not read the warrant and satisfy himself that he understood the scope and limitations. and that it was not obviously defective.)

> In United States v. Gonzalez-Lopez, 546 U.S. (June 26, 2006). (held, "A trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to reversal of his conviction." Pp. 3-12) (Quoting, Strickland v. Washington, 466 U.S. 668, 691-696, (1984), "that his [counsel's] performance was deficient and the defendant was prejudiced by it—or the defendant can demonstrate that substituted counsel's performance . . .was

---

[13]. United States v. Aguilar, 515 U.S. 595 (1995), (holding, ". . .[t]he "nexus" requirement developed in recent court of appeals decisions – whereby the accused's act must have a relationship in time, causation, or logic with grand jury or judicial proceedings– is correct construction of § 1503's very broad language. Under that approach, the accused must take action with an intent to influence such proceedings; it is not enough that there be an intent to influence such proceedings, such as an investigation independent of the court's or grand jury's authority. Moreover, the endeavor must have the "natural (cause) and probable effect" of interfering with the due administration of justice." United States v. Wood, 6 F.3d 692, 695.

not as good as what his counsel of choice's would have provided, created a 'reasonable probability that . .the result would have been different," *id.*, at 694.

Mickens v. Taylor, 535 U.S. 162, 166 (2000),  asserts that a trial is not unfair unless a defendant has been prejudiced.  The right to counsel of choice, however, commands not that a trial be fair, but that a particular guarantee of fairness be provided– to wit, that the accused be defended by the counsel he believes to be best.  *Cf.*  Crawford v. Washington, 541 U.S. 36, 61 (2002). "That right was violated here; no additional showing of prejudice is required to make the violation "complete."  Pp. 3-7.

The Government's Motion to Dismiss relying on 'Governmental' immunity must fail

pursuant to the *Civil Rights Act of 1871* and 1964, that reads in pertinent parts, and applies to

federal agents or law enforcement officer under *§ 1983*, granting relief to any (every) person,

under "color of law", who subjects any citizen of the United States to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in any action at law. . ."

In this case, Plaintiff submits overwhelming facts, evidence, 'exhibits' and other

information obtained from THIRD-PARTY interview(s) that show and clearly prove the two (2)

Government agents, John WANAT, Kevin DAVIES, AUSA David HACKNEY and District Judge

CACHERIS were directly and specifically involved in the many Unconstitutional and civil[14] rights

violations that have deprived, denied, hindered and repeatedly prevented Plaintiff from every

having any parts of his wrongful conviction heard by a Court or jury, and that has severely

prejudiced Plaintiff for the past nearly eight (8) years. During that time the Attorney General has

known about it, the IRS Commissioner has known about it, and most of the Government's

supervisors have known about these employees engaging in a criminal conspiracy under 18

U.S.C. § 371[15].  That 'criminal' conspiracy was also engaged in and joined by Glen TRIMPER.

---

[14].  **Civil Rights laws** "State judge and supervisor or appeals court had fair notice that their agreement to influence or to attempt to influence decision makers violated 18 U.S.C. § 241, since fundamental due process right of defendant is criminal case is so well established and was so clearly subverted by agreement of this kind."  United States v. Cross 128 F.3d 145 (3rd Cir. 1997).

[15].  **18 U.S.C. § 371**, Conspiracy to commit offense or to defraud United States. "It two or more persons conspire either to commit any offense against the United States, or to defraud the United States,

Plaintiff's court-appointed attorney under CJA § 3006A.  Subsequently, the U.S. Supreme Court

ruled in Brosseau v. Haugen, (citations omitted) (2004), (Ginsberg, J., concurring, with Breyer

and Scalia, J.J.), It forces courts to reach out and decide difficult and complex questions of

Constitutional law that might easily be avoided by resorting first to a simpler question of

immunity.").  On these rulings and holdings by the Supreme Court, the Government's Motion to

---

or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to
effect the object of the conspiracy, each shall be fined not more that $10,000 or imprisoned (for) not more
than five (5) years, or both."

**Elements of Conspiracy; Common design; purpose, or object**; Coconspirators "agreed to
violate money laundering statute, even where one believed money came from narcotics while other
believed it came from gambling, since so long as unlawful sources was proven to be born of enumerated
illegal activities in statute, it was not essential that conspirators agreed on same illegal activities.  United
States v. Stavroulakis, 952 F.2d 686 (2nd Cir. 1992); United States v. Dowlin, 408 F.3d 647 (10th Cir.
2005).

**Circumstantial evidence of agreement**.  "There is no requirement that agreement be
expressed, but rather secret nature of conspiracy is in most instances requires trier of fact to infer its
existence from surrounding circumstances." United States v. Hartley, 678 F.2d 961 (11th Cir. 1982); See
also United States v. Messerlian, 832 F.2d 778 (3rd Cir.1987); (Agreement required to prove conspiracy
under 18 U.S.C. § 371 ned not be written, spoken or expressed, since all that is required is evidence of
tacit agreement that may be inferred after such consideration of all circumstances.")

United States v. Rashwan, 328 F.3d 160 (4th Cir. 2003).  See also, United States v. Gosselin
World Wide Moving, 411 F.3d 502, (4th Cir. 2005); (Where evidence showed defendants engaged in price-
fixing scheme involving price-paid for . . . .government employee's belongings . . . there was sufficient
evidence to support finding of guilty on charge under 18 U.S.C. § 371, because there was conspiracy to
impair lawful function of department of [the] government.")

**Obstruction of Justice**, 18 U.S.C. § 1503, "In order to sustain a conviction for conspiracy to
obstruct justice under 18 U.S.C. § 371, the Government need not always show that judicial proceeding
existed at time defendants formed conspiracy, but must demonstrate that actions conspirators agreed to
take were directly intended to prevent or otherwise obstruct processes of specific judicial proceedings in
what that was more than merely speculative; Agreement to draw up and assert veracity of false document
was insufficient to ground conspiracy to obstruct justice charge." United States v. Vaghela, 169 F.3d 729
(11th Cir. 1999).

**False representation**, "Under 18 U.S.C. § 371, offense is made out even though primary
objective of fraudulent representation is concealment of another crime; Thus, in prosecution of jockeys
who had fixed a race and employed codefendants . . . that their primary purpose is having codefendants
attempt to cash tickets was to conceal fact that race had been fixed did not preclude conviction for
conspiring to make false and fraudulent representations to Internal Revenue Service." United States v.
Walsh, 544 F.2d 156 (4th Cir. 1976). "Conspiracy to Obstruct Justice by perjury was offense without
reference to whether perjury was consummated." Outlaw v. United States, 81 F.2d 805, (5th Cir. 1936).

31

Dismiss and their defenses of immunity must fail where Plaintiff's complaint does properly state a case from which a remedy can be obtained, when the Court reviews the Complaint in light most favorable to Plaintiff.

Plaintiff's Complaint shows by more than 50 pieces of evidence and THIRD-PARTY documents with about 30 exhibits that this Court must review showing that the Government knew of, about, and its agents and Judge was directly involved causing all Plaintiff's Civil and Constitutional Rights violations by Judge CACHERIS, AUSA David HACKNEY, two IRS agents John WANAT and Kevin Davies and Jason MINARD and Steven GONZALEZ.  All were engaged in a criminal conspiracy, (18 U.S.C. § 371) **Civil Rights laws** "State judge and supervisor or appeals court had fair notice that their agreement to influence or to attempt to influence decision makers violated 18 U.S.C. § 241, since fundamental due process right of defendant is criminal case is so well established and was so clearly subverted by agreement of this kind." United States v. Cross 128 F.3d 145 (3rd Cir. 1997). ("on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is (was) clearly violated.)

Thus, Judge CACHERIS, AUSA HACKNEY and TRIMPER acted in concert to force, threaten and intimidate Plaintiff to get Plaintiff to plead guilty to crimes that did not occur and did not happen.  TRIMPER threatened more than 250 other innocent 'criminal' defendants by force, threats and intimidated each of them, per Plaintiff's (new) paid defense counsel, Brian Moran, Esq., on July 14, 2006, who reviewed, read and saw all the illegal and Constitutional violations committed by TRIMPER and HACKNEY, with CACHERIS' full and complete knowledge, consent, and permission.

32

It is for these reasons this Court must deny the Government's Motion to Dismiss on the grounds the Government played a direct, specific part in Plaintiff's caused unconstitutional acts; and, the Government did intentionally fail to prevent or correct these unconstitutional acts committed by their own agents, officers and judges, against Plaintiff, Pro-Se.

## ARGUMENT

### GOVERNMENT'S AGENTS AND AGENCIES RESPONSIBLE AND CAN'T RELY ON IMMUNITIES AS A DEFENSE.

Plaintiff's complaint is firmly established on the grounds of his presenting specific facts, evidence, 'exhibits', and THIRD-PARTY documents, or testimony, that establishes [that] the Government's own agents and its respective agency, the Internal Revenue Service, were directly responsible for the unlawful search and seizure affidavit applied for on February 5, 1998, and the resulting unconstitutional raid conducted on February 6, 1998 that caused the Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendments violations, Due Process and Equal Protection of Laws violations. And, the Government's other agency the Department of Justice and its agency, the U.S. Attorney's Office and District judge who are specifically responsible for other aspects of Plaintiff's 42 U.S.C. § 1983.

All these are specific facts, evidence, and THIRD-PARTY documents and testimony that supports there were specific persons involved in (several) conspiracies from before February 5, 1998 to after May 10, 2002, to this date, September 5, 2006.

The Supreme Court held, and Congress enacted in § 1983 that when a Constitutional right has been violated, an injured Plaintiff can proceed forth in a § 1983 filing. The Court held

> in Saucier v. Katz, 533 U.S., at 206, (For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell v. Forsyth, 472 U.S. 511, 535, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635 (1987)). "Section 242 makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution."

33

Plaintiff's undisputable facts and 'evidence' or 'exhibits' support that in 1992, IRS agent John WANAT was the primary agent who lost against Plaintiff's defense attorney, Larry DUBE, Jr. It was further established then, as again in 1998, that WANAT had engaged in a criminal conspiracy with an IRS employee, Cynthia, to get FIORANI terminated when he was employed with the IRS in Taxpayer Service.

The Government's Motion to Dismiss failed to show that its own agents and agencies, the IRS was the exclusive cause of Plaintiff's Constitutional and Civil Rights violations that was prevented from going forward in August 1998, by (former) AUSA Robert CHESTNUT. That when Plaintiff's paid attorneys, Richard GARDINER and Larry DUBE acted swiftly to expose the illegal acts committed by Agent WANAT and DAVIES, and exposed to CHESTNUT the intentionally false alleged affidavits from Jason MINARD of Crystal Ford and Steven Gonzalez of Ted Britt Ford.

The IRS' raid was conduct on February 5, 1998, led by WANAT, who intentionally falsified the warrant's affidavit and ¶10l. It was WANAT who purposely falsified a six (6) year old misrepresented fact that Plaintiff was terminated from the IRS on a manufactured date to a District Court Magistrate Judge Buchanan, rendering that affidavit, lacking any probable cause. See United States v. Leon, 468 U.S. 897, (1984); and Franks v. Delaware, 438 U.S. 154 (1978) (The court defined "truthful" for Franks purposes as "this does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause . . .But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Lanier v. Commonwealth, 10 Va. App. 541, (quoting Franks, 438 U.S. at 165.

The Government's agent WANAT knew the information he put into the warrant affidavit was not even remotely "truthful" contrary to Franks. The IRS personnel and Commissioner's

34

Office learned of WANAT'S misconduct after June 6, 1998 as referenced from the IRS's letter. Per the letter, the IRS agents had no legitimate reason to be conducting any 'criminal investigation' that is not founded on tax law. (Pltf's. Exhs. 12-15). Plaintiff's exhibits show the legal standards on criminal activity for 'conspiracy', 'obstructing justice', and 'commissions of perjury' under 18 U.S.C § 1001 and 18 U.S.C. § 371. This Court must review all Plaintiff's facts, evidence, exhibits and THIRD-PARTY documents or interviews that show a clearly deliberate intent to falsify, manufacture and manipulate the magistrate judge's decision to issue an affidavit on solely unconstitutional grounds, with an ulterior motivation of malice or retaliation by GONZALEZ, MINARD, WANAT and DAVIES.

Specifically, the initial defendants herein, MINARD, WANAT and DAVIES intended to commit a deliberate fraud on the Court in and by their submission to the Government of a false legal document, asking the Court Judge to accept it, so they could then act upon it, with bad-faith under the law. (Pltf's Exh. N-6). All that material was given to CHESTNUT by (paid) defense attorney GARDINER of MINARD'S, GONZALEZ'S and WANAT'S "criminal acts" of perjury and making false statements under oath to a –governmental agency–. On and after June 6, 1998, but before the unconstitutional indictment by a corrupt AUSA G. David HACKNEY, the Government's IRS and DOJ knew of, had knowledge about, and were told about the past criminal activities of MINARD and GONZALEZ, based on aspects of the warrant's affidavit and ¶ 10. (Pltf's Exh. –5).

This Court must not allow the Government, a primary cause of a person's § 1983 civil and constitutional rights violations, to be excused on claimed defenses of immunity, while the Government's own agents and agencies did cause Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendments and Due Process violations, exhibited in Plaintiff's complaint of specific criminal acts that aggravated the misconduct committed by those Government agencies' agents.

The Supreme Court held in <u>Correctional Services Corp., v. Malesko</u>, 534 U.S. 61 (2001), "Our authority to imply a new constitutional tort, not expressly authorized

35

by statute, is anchored in our general jurisdiction to decide all cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331." "We first exercised this authority in *Bivens*, where we held that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against those officers in federal court. . ."the Fourth Amendment does not in so many words provide for its enforcement by award of money damages for the consequences of its violation." And,

In <u>Bivens</u>, 403 U.S., at 396. Nonetheless, relying largely on earlier decisions implying private damages action into federal statutes, see *id.*, <u>at 397</u> (citing <u>J.I. Case Co., v. Borak</u>, 377 U.S. 426, 433 (1964)); <u>403 U.S., at 402-403</u>, n. 4 (Harlan, J., concurring in judgment); ("The <u>Borak</u> case is especially a clear example of the exercise of federal judiciary power to accord damages as an appropriate remedy in the absence of any express statutory authorization of a federal cause of action"), and finding "no special factors counseling hesitation in the absence of affirmative action by Congress," *id.*, <u>395-396</u>, we found an implied damages remedy available under the Fourth Amendment." . . .We reasoned that the threat of suit against the United States was insufficient to deter the unconstitutional acts of individuals. *Id.*, 21 ("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent that the FTCA remedy"). <u>446 U.S., at 19-20.</u>

Accordingly, this Court must deny and dismiss the Government's Motion to Dismiss on all

Plaintiff's facts, evidence, "exhibits" and THIRD-PARTY documents that clearly show that AUSA

HACKNEY, TRIMPER and CACHERIS did on or about October 30, 1998, engaged in a criminal

conspiracy, adverse to the Constitution. The Supreme Court held in <u>Mackey</u> and held in <u>Davis</u>,

"By contrast, decisions . . . "'beyond the power of the criminal lawmaking authority to prescribe,"

*id.*, at 311, (quoting <u>Mackey</u>, *supra*, at 692), necessarily carry a significant risk that a defendant

stands convicted of, "an act that the law does not make criminal." <u>Davis v. United States</u>, 417

333, 346 (1974). "He is not arguing [] his guilty plea was not intelligent, but rather that it was not

intelligently made because the information provided him by the District Judge at his plea colloquy

was erroneous." This type of claim can be fully and completely addressed on direct review

based on the record created at the plea colloquy. . . "cause" and actual "prejudice", <u>Murray v.

Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977), (. . .or that the

defendant is "actually innocent."); <u>Murray</u>, *supra*., at 496; <u>Smith v. Murray</u>, 471 U.S. 527, 537

(1986), See <u>Bousley</u>, at Pp. 622-623.

Therefore, the Government's Motion to Dismiss Plaintiff's Complaint must be denied and the Government's reliance on governmental immunity must be denied on these grounds and under these facts and evidence, presented by Plaintiff.

## GOVERNMENT AGENTS KNEW ABOUT MIRANDA WARNINGS

Anyone who has gone through any type of criminal law education or law enforcement training knows that he/she has to give Miranda warnings after 1969. Plaintiff's letters and filed (Pro-Se) legal documents specifically reference that of Plaintiff being kept handcuffed for not less than six (6) hours, while not being given his Miranda warnings under the Supreme Court's holding on –in-custodial interrogation–, in Plaintiff's home. And Plaintiff not being able to leave nor make a telephone call to his attorney, Mr. HILLSMAN, is a requirement for being given Miranda warnings. See Miranda v. Arizona, 384 U.S. 486 (1966); U.S. v. Wallace, 323 F.3d

> 1109 (8th Cir. 2003); See also Mickens v. Greene, 74 F.Supp. 2d 586, 613-615 (E.D. Va. 1999) (ruling, "The state judge was therefore obligated to look further into the extent of the risk and, if necessary, either secure . . . however, did nothing to discharge her constitutional duty of care. Id., at 614. . . .In the case in which we have devised a remedy for such judicial dereliction, we held that the ensuing judgment of conviction must be reversed. . ." Mickens v. Taylor, (citation omitted), "justice must satisfy the appearances of justice." Offutt v. United States, 348 U.S. 11, 14 (1954); Setting aside Mickens' conviction is the only remedy that can maintain the public confidence in the fairness of the procedures employed. ." Swanson, 341 F.3d 524 (6th Cir. 2003), "The obligation to administer a Miranda warning to a suspect only arises where there has been such a restriction on a person's freedom as to render him "in-custody." U.S. v. Czichray, 378 F.3d 822 (8th Cir. 2004), holding, "The only relevant inquiry in considering whether a person is in custody for purposes of Miranda is how a reasonable person in the defendant's position would have understood the situation. . . .(2) whether the suspect possessed "unrestrained" freedom of movement. . . .(5) whether there was a police dominated atmosphere". . . .That a suspect is discouraged from using a telephone in his home during interrogation. ... whether he is in custody for purposes of Miranda." See. also Orozco v. Texas, 394 U.S. 324, 326 (1969); Coleman v. Commonwealth, 226 Va. 31, 47, (1983).

Plaintiff submits to this Court his specific exhibits, (Pltf's N–3) of his "late" father's telephone calls to Plaintiff's home on three separate occasions on February 6, 1998. That bill

37

disproves the Government's claims made in their Motion to Dismiss, countering their statement as a 'footnote' that Plaintiff's "late" father's telephone bill shows that Plaintiff was in-custody, contrary to Constitutional law, and was never given his Miranda warnings, nor was ever able to answer his father's three telephone calls.

The Government's Motion to Dismiss does not include its own illegal or unconstitutional acts of law committed by an AUSA and a 'corrupt' judge who jointly engaged in a 'criminal conspiracy' where that same judge was involved in the grand jury selection; issued the indictment; issued the criminal arrest warrant; and all while, knew about and was aware of, and had reasons to know that perjured facts and evidence, altered-distorted exhibits and documents were shown to grand jurors from which an unconstitutional indictment was handed down before this same judge overseeing the grand jury. See. <u>Castellano v. Fragozo</u>, (citation omitted); see also <u>Mickens v. Taylor</u>, (citation omitted). "When an indigent defendant is unable to retain his own lawyer, the judge's appointment of counsel is itself a critical stage of a criminal 'case'. At that point, defendant has no lawyer to protect his interests and must rely entirely on the judge. For that reason it is the "solemn duty of a . . . judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of 'any' proceedings." (quoting <u>Von Moltke</u>, 322 U.S. at 722).

CACHERIS never protected Plaintiff during any parts of the case after CACHERIS was told TRIMPER was totally defective, willfully ineffective and that TRIMPER failed to comply with this Court's and the Fourth Circuit's Order dated June 30,1999, (Pltf's. Exh. C-1), Plaintiff's first criminal appeal, as of right. (Pltf's. Exhs. N-1-15). The Government's agents, including the case judge CACHERIS deliberately violated a constitutional right of Plaintiff's to the effective services of an attorney, appointed by the court. Under the Sixth Amendment and the Supreme Court's holding in <u>Strickland</u>, and its progeny, the Government's position against Plaintiff's complaint

38

must be denied when (former) ASA CHESTNUT knew that there were no crimes committed by Plaintiff at anytime before he left office in or about August.

The Government failed in its Motion to Dismiss to disclose accurate facts about its past and current knowledge of, about and on its two rogue agents WANAT and DAVIES. The Government also failed to admit its knowledge of the criminal conspiracy of HACKNEY's and CACHERIS' obstruction of justice and criminal conspiracies on or about September 9, 1998 to after January 2004, and to this date of September 8, 2006, where CACHERIS has repeatedly withheld materially relevant exculpatory evidence, facts and a voice tape that proves Plaintiff was unlawfully threatened, coerced, forced and intimidated by TRIMPER and HACKNEY, with the knowledge, permission and consent of CACHERIS. HACKNEY aided MINARD and GONZALEZ with their perjured affidavits, knowingly made false statements that HACKNEY had full and complete knowledge of all illegal acts under Federal laws, adverse to our Constitution and Equal Protection of laws. (United States v. Rashwan, 328 F.3d 160 (4th Cir. 2003). See also, United States v. Gosselin World Wide Moving, 411 F.3d 502, (4th Cir. 2005); (Where evidence showed defendants engaged in price-fixing scheme involving price-paid for . . . .Government employee's belongings . . . there was sufficient evidence to support finding of guilty on charge under 18 U.S.C. § 371, because there was conspiracy to impair lawful function of department of [the] Government.") (Pltf's. Exh. N-2).

Under the federal law of § 371, "prosecutorial misconduct is the 'but, for' of Hackney's misconduct where he knew, had reasons to know, and ways to learn about agent WANAT'S conspiracy with MINARD and GONZALEZ to purposely fabricate, manufacture, or commit perjury in the grand jury while obstructing justice. See Dye v. Hofbauer, 545 U.S. ____ (Oct. 11, 2005); See also Bousley v. United States, 523 U.S. 614 (1998). (Pltf's Exh. N-4). Plaintiff never faxed anything to Crystal Ford on any of those dates falsely alleged by the Government.

39

(Pltf's. Exhs. N-4).  GARDINER and DUBE took information from USADAG TSONOFF those

agents WANAT and DAVIES were with HACKNEY, –setting Plaintiff up– making no crimes,

crimes that violated Federal laws, and Plaintiff's civil and Constitutional Rights.  GARDINER,

DUBE and DIJOSEPH found that HACKNEY had illegally –altered–, distorted, and

manufactured" (Pltf's Exhs. N-4a-d at top of page).

Factually, that fax came from Crystal Ford and was never sent by Plaintiff to Crystal Ford,

as manipulated by the Government's AUSA HACKNEY'S, WANAT'S and DAVIES'  falsified

claim that Plaintiff committed 'wire-fraud' on December 20, 1997, when Plaintiff was at the

dealership and could not had ever sent any fax(es).  That fact alone shows that the

Government's agents WANAT and DAVIES, with MINARD did engage in a criminal conspiracy

that TSONOFF found to support that a deliberately fabricated, manufactured and trumped up  –

indictment– that CHESTNUT knew never happened beforehand.  CHESTNUT did not charge

or indictment Plaintiff in August 1998.  HACKNEY and District Judge CACHERIS did act in

concert to see to it that a wrongful indictment was obtained on HACKNEY'S, WANAT'S and

MINARD'S intentionally filed false affidavit.  <u>Devenpeck v. Alford</u>, 545 U.S. ___ (July 2005).

Those witnesses could attest to, against HACKNEY'S statements deceptively made and altered,

then presented in the grand jury.  Those grand jurors said District Judge CACHERIS, was acting

as an agent for the Government during the grand jury hearing allowing and permitting

HACKNEY'S manipulation of facts, the alteration of documents, (evidence), (Pltf's Exh. N–4)

presented to the grand jury September 9, 1998.  It was HACKNEY'S 'unlawfully deceptive acts'

and failure to present all FIORANI'S exculpatory evidence to show innocence.  But, that lead to

the unlawful and unconstitutional indictment against Plaintiff that day. (See <u>Tower</u>, (citation

omitted)), prosecutorial misconduct in grand jury, etc.)  <u>Dye v. Hofbauer</u>, 545 U.S. ____ (Oct. 11,

2005), (holding, "[a[ majority of a divided three-judge panel ruled the state prosecutor had

engaged in flagrant misconduct during the jury trial.  On this ground it reversed the District

40

Court's order denying habeas relief. The panel did not address petitioner's other claims. 45 Fed. Appx., at 428, n. 1." The Supreme Court reversed and remanded on prosecutorial misconduct on (criminal defendant's) clear claims of prosecutorial misconduct overlooked by the Court of Appeals. The Court held, (This is not an instance where the habeas petitioner failed to "apprise the state court of his claim that the . . ruling of which he complained was not only a violation of state law, but a denial of him the due process of law guaranteed by the Fourteenth Amendment." Duncan v. Henry, 513 U.S. 364, 366 (1995); "Nor is this a case where a state court needed to look beyond "a petition or a brief (or similar document)" to be aware of the federal claim. Baldwin v. Reese, 541 U.S. 27, 32 (2004). The State Court brief was clear that the prosecutorial misconduct claim was based, at least in part, on a federal right. It was error for the Court of Appeals to conclude otherwise." Dye II v. Hofbauer, (citation omitted), (Oct. 11, 2005).

Plaintiff's civil rights complaint against District Judge CACHERIS does not allow for judicial immunity and absolute immunity, where a judge abuses his powers or position, also under CJC (Code 3) is related to and concerns his knowingly participation in Plaintiff's violations of his civil and constitutional rights, by his abusing his judicial powers, authority and position, (constantly denying orders and rulings) to keep Plaintiff from obtaining a plea hearing (voice) tape(s) that will show Plaintiff did tell the Court he did not get to read, review, dispute nor challenge the Plea Agreement and Statement of Facts (SOF) containing not less than 12 false statements. In Brady v. Maryland, (citation omitted), Plaintiff is constitutionally entitled, under the 5th and 14th Amendments to have and get all materially relevant exculpatory evidence, documents and facts that could or would prove the Plaintiff innocent.

The voice tape CACHERIS is withholding from Plaintiff since November 2, 1998, violates the Supreme Court's holdings and rulings, the tape is "materially relevant" as is the grand jury "transcripts" for Plaintiff to prove perjury in the grand jury and his actual innocence, or in the

alternative, that CACHERIS knew of, about and was aware that Plaintiff's constitutional rights were violated by him making an unknowing, involuntary and unintelligent plea before CACHERIS, which was unlawfully accepted, contrary to the Federal Rules of Criminal Procedure, Rule 11 and the Constitution's Fifth and 14th Amendments, Due Process Clause, Equal Protection under the law. CACHERIS has had his court reporter alter, distort and omit statements made on the voice tape, but still withheld from Plaintiff not written into their alleged plea transcript. (Pltf's Exh. C-5.).

Accordingly, on all Plaintiff's facts, evidence, exhibits and THIRD-PARTY documents, all contradict, dispute, are adverse to and challenge anything the Government's Motion to Dismiss and claims of immunity do not address, exposes to this Court that the Government is a direct party to and is a primary result of all Plaintiff's causes of action stated and outlined in the Complaint. Therefore, for these reasons, Plaintiff's complaint states a cause of action from which all relief can be obtained, contrary to Fed. R. Civ. P., Rule 12(b)(6).


Rosario A. Fiorani, Jr.
Plaintiff, Pro-Se
7115 Latour Court
Kingstowne, VA  22315


## CERTIFICATE OF SERVICE

Plaintiff certifies he mailed, postage prepaid, to defendants Glen TRIMPER and the Government's attorney, c/o U.S. Attorney General's Office, **PLAINTIFF'S REPLY AGAINST THE GOVERNMENT'S MOTION TO DISMISS** to Glen TRIMPER, 2034 Eisenhower Avenue, Alexandria, VA., 22314, and U.S. Attorney's Office, Department of Justice, Ms. Karen Melnick 444 Fourth Street, Suite 500, Washington, D.C. 20001 on September 6, 2006; and the Fourth Circuit Court of Appeals, Attorney-Judicial Misconduct Committee, 1100 East Main Street, Richmond, VA 23219.

42

Rosario A. Fiorani, Jr.
Plaintiff, Pro-Se
7115 Latour Court
Kingstowne, VA   22315
(703) 719-0272