

August 1, 1998

Maryland Department of Transportation
Department of Motor Vehicles
Mr. Thomas Furman, Investigator
6601 Ritchie Highway, N.E.
Glen Burnie, MD  21062

RE: Your letter of February 4, 1998, Update.

Dear Mr. Furman:

This is in regard to your letter dated February 4, 1998, whereby you made reference to the following statement, "unless under direction of the United States Attorney's Office or the States Attorney's Office for Maryland.

To date, I have not heard from you as to what you meant by that. However, coincidently, the next morning after I received your letter, the IRS made a raid upon my home and it has spun off into a large multi-faceted, Multi-Million Dollar payoff eventually to me, from Crystal Ford's false statements to the IRS from 18 U.S.C. §1001.

Nonetheless, I am forwarding your letter to the Maryland Attorney General's Office, whom I have been in contact with over the last seven (7) months, since this matter has developed on or before, February 6, 1998.

Also, I am going to be having either myself, or my attorney send a subpoena to your office so that you will be "forced" to turn over the name, address and ALL PERTINENT INFORMATION concerning this John Doe, who I have been attempting to serve a Federal Subpoena on, after not obtaining your office's cooperation. Moreover, a Default Judgment was entered in Federal Court in Alexandria, VA against Crystal Ford, and the IRS are, whom I also have been working with to find these culprits and have them arrested under the Federal Law, for "lying to a Federal Agent."

In speaking with the Commissioner's 9-member panel, I will submit your letter to them in accordance with obtaining your Department's assistance in getting at and having John Doe arrested for civil conspiracy and civil and criminal conversion of my automobile, which you have stated "[t]he Administration cannot withhold registration or

refuse titling unless by Court order." I will have a U.S. Court Order to obtain John Doe's name, address, and all information concerning the VIN of that 1997 Crown Victoria. (SEE attached VIN#.)

    I will expect to hear from you soon, within 7 calendar days after receipt of this letter with the information. I also hope that I will have your office's full cooperation in getting John Doe and Crystal Ford, since it is suppose to be your job, in your job description to punish crimes committed by Car Dealerships and their owners and operators.

    Again, thank you for your assistance in these matters. I will anxiously look forward to receiving your response(s).

    Respectfully yours,



Rosario A. Fiorani, Jr.
7115 Latour Court
Alexandria, VA  22315
(703) 719-0272  Even.

Encl.: Copy, Purchase Order
      Copy, Promissory Note
      Copy, Default Judgment

cc:    Anne S. Ferro, Administrator
      MD. Attorney General, J. Jos. Curran
      MD. Dept. of Consumer Affairs, Balto.
      File copy

Ms. Wilder,

Montgomery County
Consumer Affairs
JAN 14 1998
Received

I am writing this statement of happenings concerning the aborted transaction between Ross Fiorani and Crystal Ford for the 1997 Crown Victoria ending in VIN # VX201079.

Dec 20th 1997  1) Salesperson Mohamed Diallo brought me a fax (#1 enclosed/marked) stating he had sold car to a Govt. Agency; we would be selling it at MSRP and were to be paid through a U.S Govt purchasing office of some sort, (as the fax also concurs). Upon Mr Fiorani's arrival I asked for paperwork to substantiate the U.S Govt would be paying & not the contract; phone #'s would be within the Govt funding office, when Mr Fiorani could not give any names, or numbers, I asked for I.D. Mr Fiorani, flashed what happened to be a Dept of Treasury Badge & I.D stating "he was a Govt Agent" and again reaffirmed in front of, myself, Matt Heizmann asst Matt Cooper Sec Finance Mgr, Ricky Downs F&I Mgr, Mohamed Diallo Sales Rep and a couple of other reps on hand in sales office, the car was to used by him in U.S Govt investigations and was to be titled to "Consumer Affairs F&I" (as stated on document enclosed marked #1) He repeatedly stated upon my questioning, was a U.S Govt Agency. Due to the fact no money or information of payment could be furnished the decision was made to let Mr Fiorani, fill out a loan application to secure the loan needed to collect the car if there where any problems being funded by the U.S Gov (This was necessary because Mr Fiorani wanted to have permanent modifications made to the automobile) ——(cont'd next p.)

[margin annotations:]
never happened
false — no accounts obtained w/out proof.
see exh — credit rept.
false
false — never happened
never proved it
signed pre note 48
app — MD ST
Atty. Ge
Inv. C
AFF R
never any evidence to prove it
false
never proved
to prove my motivation

Upon processing the application it was very clear Mr. Fiorani would not be ~~able to~~ eligible for our financing, we made the final ~~decision~~ decision the car must remain on lot until gov't funds were in house or @ least verification of said funds were made. Mr. Fiorani stated he would provide verification on Monday 12/22/97. No money changed hands. A minimal amount of paperwork was done. But the deal was pending verification or payment of the U.S. gov't funds.

(12/22) On Mon. 12/22/97 I was out of the dealership ill. Instead of forthcoming info on Gov Funding as Mr. Fiorani agreed to provide, he instead had a letter heavy in ~~~~ usaleese, obviously intended to intimidate faxed stating they (meaning, Ewon Dees) acting director of same so called "Gov't Agency" wanted to take delivery without any documentation. The letter goes on to state it would like us to obtain financing for him "disregarding what you know from a credit bureau report" but goes on in the same page to state "the Gov't Agency" is paying for the car. (Letter marked #2 enclosed)

In summation:
1) Again upon numerous requests no proof or documentation of any sort of alleged U.S. Gov't Agency ever supplied.
2) Continued pursuit of a loan he doesn't qualify for and continued requests to ignore his credit report.
3) Upon checking out phone #'s on application all go to non-federal gov't private lines. No U.S. Gov't Agency tried in question listed in Wash. D.C., MD, or Chantilly VA as cust stated.

[Margin annotations:]
- late Minarol old car $3,400 sold to Metcalf
- never ~~~~ back ~~~~
- Attached original credit report
- Dec. 1TD still investigating mental & physical fraud
- Item #3 enclosed
- never stated any evidence U.S.
- never happened

Consequently, 1) NO MONEY CHANGED HANDS, 2) NO INFORM OF MYSTERIOUS U.S. GOVT AGENCY WAS EVER PROVIDED, 3) NO LISTING OF US GOVT AGENCY CONSUMER AFFAIRS RESEARCH GROUP LISTED IN DIRECTORIES. 4) CONTINUED USE OF SCAM TACTICS AND NO CONCRETE PROOF OR DOCUMENTS EVER MATERIALIZING, LED MYSELF & FEELS HELD AT CRYSTAL FORD) TO BELIEVE MR ROS FIORANI IS A FRAUD AND A SCAM/CONFIDENCE MAN. HENCE WE HAD NO DEAL WITH H. OR HIS FICTICIOUS US GOVT AGENCY. WE ALSO, NEED BE, WILL PURSUE ACTION AGAINST MR FIORA FOR WHAT I BELIEVE TO BE ILLEGAL & FRAUDULENT PORTRAYAL OF A FEDERAL AGENT ON US GOVT BUSSINESS.

IF I CAN BE OF FURTHER ASSISTANCE PLEASE CALL.

THANK YOU



Crystal Ford Ltd.
Crystal Isuzu

JASON R. MINARD
Used Cars Director

3111 Automobile Blvd.
Silver Spring, Md. 20904

(Baltimore) 792-9914
(Washington Area) 890-6100
(Fax) 890-3911

January 24, 1998

**CONFIDENTIAL**

Montgomery County
Consumer Affairs

JAN 26 1998

Received

Montgomery County Consumer Affairs
Ms. Sharon Wilder, Investigator
100 Maryland Avenue, 3rd Flr.
Rockville, MD 20850

Re: Reply to Mr. Minard's response regarding the Crystal Ford complaint.

Dear Ms. Wilder:

This is my reply to Mr. Jason Minard's response to the complaint you sent him and I faxed Crystal Ford on December 23, 1997, and mailed to the Maryland Attorney General's Office for a criminal investigation of the dealership's criminal activities.

1. I adamantly dispute and deny all of Mr. Minard's false interpretations and illogical misrepresentations he makes throughout his response to you. These are indicative of his specific statements, "*I flashed a badge that looks like a "Department of Treasury" badge.*" And, "*A Department of Treasury Badge & ID with a car titled in Consumer Affairs R & I.*" do not make any logical sense. He fabricated his statement(s) when Mr. Holtzman commented to me about my haircut saying, "*I look like an ATF agent*" with my haircut." Afterward, Mr. Holtzman commented that he worked at Treasury. Then, Mr. Holtzman showed me his ponytail. That was where Mr. Minard acquired his illusion of a Treasury badge. Still, Mr. Minard is extremely confused about his memory of December 20, or he would not make conflicting and fabricated statements in his response.

2. I adamantly dispute and deny Mr. Minard's assertions that I had to place money on the car. The law states, [a promissory note is money]; and [payment on any contract] is legally binding on the parties on the promissory note. The reverse side of the buyer's order, ¶6, says a Promissory Note is "a negotiable instrument." The buyer's order *confirms full-payment was made for the car at the time of purchase with a promissory note dated December 20, 1997, and signed by the dealership..* (Emphasis added)

3. I vehemently dispute and deny all of Mr. Minard's statements that I was to give him any other information. I was not under any legal obligation to provide Mr. Minard with other information regarding telephone numbers, names, addresses, supervisor's names, places of employment, etc. before or after the buyer's order and promissory note was signed y his representative of the dealership.

Page 2

This includes where any [public or private] financing was coming from, may come from and from what person(s), agency, company, or organization(s) that was planning the financing.

    4. Regarding the loan application, Mr. Minard had his accomplices intentionally violate consumer protection laws when he began making inquiries about me, without my authorization and by pulling my credit report. Mr. Minard was informed that it *was without my authorization after he did it*. However, his false statement that the information was to obtain financing through them, "[t]he decission (sic) was made to let Mr. Fiorani fill out a loan application to secure the loan needed to cover the car". This is a clear violation of <u>the Fair Credit Reporting Act and the Uniform Commercial Code</u>. His statements are false.

    A letter was sent to Equifax Credit Bureau stating Crystal Ford had no authority to obtain my credit record. I also sent a copy to the Federal Trade Commission, Bureau of Consumer Credit Protection for their review and record of Crystal Ford's illegal actions.

    5. He told me to complete a promissory note. These facts are evidenced by the buyer's order and promissory note. Not to forget, the prior night's fax to me from Mr. Diallo, the salesman, that certainly says I was the intended purchaser of the car.

    6. I dispute Mr. Minard's recollection and his claimed memory of what happened on that day. This includes that he was not present with me, Mr. Diallo or Mr. Holtzman during most of the time. Besides, I dispute Mr. Minard's statement that "*a minimum amount of paperwork was done.*" This is false according to several car dealers.

    7. I dispute and deny Mr. Minard's claims that I was using a "U.S. Government Agency." It is inaccurate and misstated. He was told what he needed to know. He needed nothing more, and nothing more was asked of me despite what Minard has now devised in his response. <u>Likewise, Mr. Minard's ASSUMPTION that I was using a "federal agency" for FUNDING is inaccurate and misrepresented.</u> Instead, <u>he claims I was to supply him information on Monday, December 22, 1997</u>. That is false and misrepresented. I told Mr. Minard several times, I was going to apply for payment; but I needed completed paperwork and the car, (as evidenced by the finance's fax), so that on Monday, I could fax them the paperwork to process payment." This was stated in the letter and I told Minard it would take **30-days, plus 8 days**, for the office, <u>being closed Christmas and New Year's</u> to process payment <u>34-38 calendar days</u> to process.

    8. Relating to the letter Mr. Minard referenced. He did not intelligently understand the letter which he makes reference to. Mr. Minard states, "<u>He instead had a letter heavy in "legalese" & obviously intended to intimidate. . .</u>" Minard created an imaginary explanation of that letter to misinterpret what he cannot understand. The letter speaks

Page 3

for itself and is clearly written. Then, Mr. Minard repeats his false statement, "*The car needed money on it.*" It is false, both under the law and it never happened, except in Minard's mind.

9. Mr. Minard moved to a higher level with his malicious intended harm me in my job, reputation and personal life by his statement(s), "*that I am bogus, a sham and a confident man*". Those statements are libelous and slanderous against me and those statements will cause Mr. Minard further legal trouble on top of his current ones.

10. Regarding the threatening and abusive telephone call, I have no option, but to defend myself against his malicious claims. This is not limited to pursuit of Mr. Minard for that Saturday morning threatening telephone call to me, on January 10, where Mr. Minard threatened to "harm" to me with false statements, accusations, and disparage my job and reputation because I filed this complaint against him and the dealership.

11. Subsequently, I received new information from another consumer protection agency located in Montgomery County, that has obtained similar complaints against **Crystal Ford** for similar criminal acts relating to salesmen selling previously sold cars to third parties. This matter will be very interesting to the Attorney General, Department of Motor Vehicles, and the Maryland State Police for the patterns of illegal conduct against consumers.

In conclusion, Ms. Wilder, it strongly appears Mr. Minard has manipulated facts, fabricated events, and misrepresented information in an effort to persuade you, and others, that he was correct in stealing the car, breaching a contract, causing various amounts of civil damages by violating numerous federal laws.

Furthermore, he fashions a plan consisting of a misstatement that a faxed letter to him was meant to "intimidate" him. However, he really did not understand the legal consequences of that fax's clearly written notice to him of his UCC violations. Those UCC violations he and others clearly ignored. Now, comes the judgment of others who have more knowledge, far more legal knowledge, and are better able to understand that Minard broke the law in many ways.

Next, Mr. Minard is hoping his accusations, assertions, allegations and words of defamation will carry heavy weight against me by his calling me, "bogus, a sham, and a confidence man." But, he fails to understand that these statements are clearly libelous and slanderous. It also defames my character and will cause him more legal problems. He fails to realize he could be subject to nearly $150,000 in civil penalties of varying degrees. Some of those civil penalties are from violations of UCC law and the Fair Credit Reporting Act.

Page 4

    Likewise, Mr. Minard appears to be stupid expecting others to ignore what he did. And, his threatening and abusive telephone call to me on January 10; And, new information regarding Crystal Ford's selling previously sold cars to others for more money is considered to be grand-theft auto by most criminal law standards. These new complaints lay a clear pattern of misconduct against Crystal Ford's mismanagement and illegal behavior of consumers'. Those the Attorney General would probably like to know about, including the Division of Motor Vehicles and the Maryland State Police.

    Therefore, Ms. Wilder, if another higher-level manager would like to attempt to settle these serious matters, making a clear statement to remedy these damages soon. I would work with them and you to immediately settle these issues before further damages are incurred and the courts enter the picture very soon. I would appreciate your input into attempting to arrange whatever resources you have at your disposal, to reach the very top persons at Crystal Ford, bypassing Minard, Holtzman and those others, in our effort to obtain full-settlement and a closure of this case.

    I believe that if you can surpass Minard, who is too deeply in trouble here, and his illegal actions would and should be made a part of the top man's, or woman's attention, I would work with you to resolve these pending issues very soon with specific answers that I need to assess damages against that third party who conspired to steal the car.

    I look forward to hearing from you next week concerning attempting to resolve these issues and matters soon and bringing to a satisfactory conclusion these matters.

    Sincerely,

Rosario A. Fiorani, Jr.
7115 Latour Court
Alexandria, VA 22315
(703) 719-0272 Tele-FAX
(202) 896-7473 24-hr. Pager

cc:    Montgomery County Consumer Affairs
       Ms. Sharon Wilder, Investigator
       100 Maryland Avenue, 3rd Flr.
       Rockville, MD 20850

       MacDowell & Associates, P.C.
       Ms. Paige E. Harris, Esq.
       10500 Sager Avenue, Suite F
       Fairfax, VA 22030

Page 5

Fairfax County Consumer Affairs
Mr. Roy Seger, Investigator
12000 Government Center Parkway
Suite 433
Fairfax, VA 22035

File copies (4)