



Do Not Physically Deliver Car Until OK'D by Jean —

Gentlemen, Do Deliver Saturn will go to Shippers via Airborne Shipping Dept.

10:30 pm 7/10/98

Went to Florida, asked for names & phone # of Federal Agency, they refused to give name. Would not give it, anonymous. Threatened to arrest him. Also told to defraud Chase of $25. Had to break in to possible bank rip-off. We believe he is portraying Fed Officer. Illegacy old IRS Badge.

SEP 0 2 1998

# FOREWORD TO THE THIRD EDITION

In the spring of 1978, when I was still a prosecutor, I came up with the idea that, since there were no decent books on the subject, somebody needed to write a comprehensive, yet easily understandable, book on the law of search and seizure. Lawyers Co-op and I talked about it, and they agreed. Three months after we signed the contract to do the book, West Publishing Co. published the first edition of WAYNE R. LAFAVE, SEARCH AND SEIZURE. A TREATISE ON THE FOURTH AMENDMENT (1978).[1] As a collector of law books on criminal law and procedure, I was one of the first to acquire it. Lawyers Co-op and I conferred, and we decided to go ahead with the project because our primary focus was aiding trial lawyers and trial judges and not just appellate courts. Not having written a casebook and numerous law review articles to draw from, nor a part-time job with cadre of university-supplied law students to do the additional research, it took me three and one-half years to get the first edition into print.

Now, twenty-one years after the first edition was started, you are holding the third edition, and a lot has changed.

As a prosecutor, I found how easy it was to mold (manufacture?) credibility determinations to avoid reversal on appeal. I also dealt with police officers that I felt were lying and I assumed that the judges knew they were, too, and we all know how credibility determinations are made. And, we have all heard this rhetorical question in the courtroom. "What reason would the police officer have to not be telling the truth?" Maybe because the end is justified by the means? Maybe because every cop and politician wants to be a hero in the "war on drugs"? Whatever. I quit being a prosecutor when it finally dawned on me that I had become an unwitting accessory to the apparent impending death of the Fourth Amendment.[2] Although one would not have to worry about official assignment of blame in this death, especially since most public officials would like to take credit for it, I still had to live with myself. In the years since this work was first published, my opinions of some things have sharpened because of the cases I have handled and the clients I have had acquitted and imprisoned.[3]

---

1. Authors normally do not cite their competitors, but I do here to point out the differences between us.

2. "Liberty—the freedom from unwarranted intrusion by government—is as easily lost through insistent nibbles by government officials who seek to do their jobs too well as by those whose purpose it is to oppress; the piranha can be as deadly as the shark." United States v $124,570 (1989, CA9 Cal) 873 F2d 1240, 1246, 108 ALR Fed 643 (Judge Kozinski).

3. In 26 years of practice, I have litigated virtually every type of search and seizure issue from abandonment to Interstate Highway roadblocks to huge document and computer searches and searches by surgery for bullets.

·ls are
cense.
lously
)w my
issues
peal. I
ısights
nately

of the
ıthors,
ıt how
in trial
sented
ersons
ıtcome

ıdment
ıt trial
y. The
minds
  ⸺ ıe
vas an
it was

y times,
realities
ature of
finn) 58

edibility
onically
luct was
consent
)ntained

r here!"
defense

·rom the
for oral
Yackle.
/ thanks

important enough to be a part of the Bill of Rights adopted in 1791. See §§ 1.2–1.6 infra.

The most obvious change in the Fourth Amendment landscape was the Supreme Court's 1984 adoption of the good faith exception in *United States v. Leon*, 468 U.S. 897, 82 L.Ed.2d 677, 104 S.Ct. 3405 (1984) (discussed in Chapters 4 and 5), decided just two years after the first edition of this book was published. It was generally downhill from there. As a result, search and seizure litigation became hopelessly depressing for years. The signals by the Supreme Court in *Leon* and other cases were not lost on judges and prosecutors. It seemed like police expediency was more important than individual privacy. At times, criminal defense lawyers felt like the Fourth Amendment was on life support and we were working under the conditions of doctors in a war zone performing triage, deciding what part of the Fourth Amendment we could save. The "war on drugs" has literally become a war on the Fourth Amendment.[7] Many of these aforementioned prosecutors and judges, legally bound by their oath of office to support the Constitution, are doing all they can to undermine it because their politics requires it. The intentional vagueness of "reasonableness," the "touchstone of the Fourth Amendment,"[8] makes the Fourth Amendment as chameleon-like as they want. Again, the end justifies the means. Recently, however, some appellate courts seem less willing than they were before both to accede to transparent claims of law enforcement necessity and to engage in patent intellectual dishonesty. To their credit, criminal defense lawyers did not give up on the Fourth Amendment.[9]

Lastly, Lexis Law Publishing now owns the rights to this book, and their editorial staff has reinvigorated this product. Providing a useful reference work to those of us who litigate in the trenches has always been their goal, too. I believe that my experience as a criminal litigator, working from both sides, is what separates this product from anything produced by our competitors.

---

7. See Wisotsky, *Crackdown. The Emerging "Drug Exception" to the Bill of Rights*, 38 Hast L J 889 (1987).

8. Robinette v Ohio (1996) 519 US 33, 39, 136 L Ed 2d 347, 117 S Ct 417, quoting Florida v Jimeno (1991) 500 US 248, 250, 114 L Ed 2d 197, 111 S Ct 1801, citing Katz v United States (1967) 389 US 347, 360, 19 L Ed 2d 576, 88 S Ct 507 (1967). See § 1.19 infra.

9. As my good friend Gerry Goldstein of San Antonio, NACDL Past President and stalwart of the criminal defense bar, would remind us, quoting Mick Jagger, "You can't always get what you want. But if keep on trying, you might just get what you need." Somehow, this partially explains what criminal defense lawyers do striving for whatever "justice" we can get in America's courthouses today.