UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED

'03 SEP 12 A10:11

COURT OF APPEALS
FOURTH CIRCUIT

In the Matter of a         *

Judicial Complaint         *         No. 03-9042

Under 28 U.S.C. § 351      *

### MEMORANDUM AND ORDER

This complaint is brought pursuant to 28 U.S.C. § 351(a), which provides an administrative remedy for "conduct prejudicial to the effective and expeditious administration of the business of the courts" and for judicial inability to "discharge all the duties of office by reason of mental or physical disability."

Complainant alleges that the district judge who presided over his criminal proceedings knew that the facts presented against complainant were false and his guilty plea coerced but nevertheless accepted the plea. The complaint further alleges that the judge continued to ignore complainant's proof that evidence had been manufactured, perjury committed, and his constitutional rights violated. <u>By ignoring complainant's evidence that his conviction was the product of prosecutorial misconduct, IRS retaliation,</u> malice, and a conspiracy which included the Assistant United States Attorney and defense counsel, the judge allegedly failed to uphold his oath of office, thereby engaging in misconduct cognizable under 28 U.S.C. § 351(a).

*Illustrates [corruption ?] [illegible] next page.*

This complaint must fail because its allegations of judicial misconduct are directly related to the merits of the judge's rulings. The judge's rejection of complainant's challenges to his criminal proceedings and conviction does not give rise to a claim of judicial misconduct. Under 28 U.S.C. § 352(b)(1)(A)(ii), claims that are directly related to the merits of a judge's ruling cannot be raised through a judicial complaint. Rather, such claims are properly brought through the normal appellate review processes. *See In re Charge of Judicial Misconduct*, 685 F.2d 1226 (9th Cir. Jud. Council 1982).

Because complainant's allegations against the district judge are all directly related to the merits of the judge's rulings in complainant's criminal and post-conviction proceedings, this judicial complaint must be dismissed pursuant to 28 U.S.C. § 352(b)(1)(A)(ii).

IT IS SO ORDERED.

William W. Wilkins
Chief Judge

[Handwritten annotations: "Shows bad rulings are (not) misconduct when not allowing any hearings, trials and w/holding exculpatory evidence." / "Wilkins is afriad of Cacheris"]

<u>**Memorandum**</u>

TO: Glen Trimper

FROM: Ross Fiorani

SUBJ: Breaking apart Indictment

DATE: October 21, 1998

RE: Case No.: CR-98-340-A

Dear Glen:

The enclosed document is for your use and I hope that it is helpful to you in laying out an argument for the Court on Oct. 30, Motion's Day.

I want to outline what I believe is outrageously distorted by Mr. Hackney.

I hope that you will use it, some of it, most of it or at least think about how it may come into play in attempting to obtain <u>a dismissal</u>. How you use it is up to you. I wanted to do the breakdown of the sentences showing that they are false, manufactured, distorted and are a form of "prosecutorial misconduct" according to what Richard showed me how to do to the Affidavit.

I look forward in hearing your actual thoughts, including the evidence which I have included.

Ross.

7/27/00 @ 3:13 P.M.

Glen called me back - regarding updating me on his Tuesday conversation. — During the brief call - I asked him about the possibility of the judge's reactions concerning the pending appeals and $3250.

He (Glen) said it is all "garbage" "trash" and "bullshit." The conversation ended w/ seeing my tomorrow.

I then asked him how Cacheris can handle this case w/ the Broad

## Memorandum

TO:     Glen Trimper

FROM:   Ross Fiorani

SUBJ:   Breaking apart Indictment

DATE:   October 21, 1998

RE:     Case No.: CR-98-340-A

Dear Glen:

The enclosed document is for your use and I hope that it is helpful to you in laying out an argument for the Court on Oct. 30, Motion's Day.

I want to outline what I believe is outrageously distorted by Mr. Hackney.

I hope that you will use it, some of it, most of it or at least think about how it may come into play in attempting to obtain a dismissal. How you use it is up to you. I wanted to do the breakdown of the sentences showing that they are false, manufactured, distorted and are a form of "prosecutorial misconduct" according to what Richard showed me how to do to the Affidavit.

I look forward in hearing your actual thoughts, including the evidence which I have included.

Ross.

## ELEMENTS AND REASONS FOR DISMISSAL OF 18 U.S.C. 912

1. Malicious behavior from two dealerships, stemming directly from complaint filed on December 23, 1997; and, serious doubt on their probable cause and instigation of federal investigation by IRS.

2. IRS/Federal agents protecting both dealerships from prosecution; including threatening and abusive telephone call by "Director, Used Cars, Jason Minard" of Crystal Ford. Jan. 10, 1998.

3. No affidavit with search warrants, Feb. 6, 1998, as stated by three attorneys who interviewed Defendant in this case. Implies serious defects in warrants and subsequent seizures.

4. Search and Seizure Warrants initiated by 7 or 8 heavily armed federal agents and county police on morning of Feb. 6; as well as two (2) IRS agents have a prior malicious and predisposed concern for this case stemming back to Sept. 1992 against Defendant, Fiorani.

5. Search & Seizure (S&S) warrant(s) are too broad, and facts contained within the warrants have an incorrect date, October 1992 should be December 1992.

6. Defendant held in handcuffs during four of six and-one-half hours of search & seizure of Defendant's and wife's home on morning of February 6, 1998 at 5:50 a.m. (5:50 - 11:30)

7. Items seized are not relevant to, or included in search & seizure warrant(s), to be seized; and items listed, consisting of unlisted papers, documents, separate files, miscellaneous pages, computer documents, computer discs, tax information and computer files not specifically listed in the *INVENTORY LISTINGS OF SEIZED ITEMS.*

8. Defendant was not advised of his Miranda Rights, while "in-custodial (handcuffs)" and while being seriously interrogated/questioned to *"ADMIT GUILT, CONFESS AND STAND UP AND BE A MAN, TAKE RESPONSIBILITY. ..."* by two and three agents simultaneously.

9. Serious problems with Probable Cause, after both dealerships have ax to grind against "alleged defendant".

10. Statute does not support a charge against Defendant, where elements of second part of Statute (18 U.S.C. 912) does not contain elements of any crime, as stated by agents several times during "interview/Interrogation."

11. Defendant lacks "Mens Rea" *to commit the crime charged and elements of P.C.* and Search & Seizure Warrants far exceed the scope of the charge of Impersonation . . ..

12. Two agents acting overzealously in their approach to prosecute Defendant.

13.     Over a dozen files, separately identified to date, are missing and are not relevant to warrants.

Notes: Miranda Warnings; In Custodial Interrogation; Lack of Good Faith; Inventory Listings; Search and Seizures; Defective Warrant; Faulty Probable Cause; Malicious Prosecution; Selective Prosecution by Federal agents; Circumstantial evidence; Mens Rea;

## Breakdown of the Indictment

Page 1.

Ind.: "During all times material to this indictment defendant (shortened) FIORANI was the principal and only employee of his company, operated from his home, called Consumer Affairs."

Resp.: That is inaccurate and incomplete. <u>Consumer Affairs Lobby</u> was the first formation of "my company" where there were eight (8) persons from George Mason University who helped me for not more than 18 months. (Jan. 1993 - about Dec. 1995) The home part is about the only accurate thing.

Ind.: "At Consumer Affairs, FIORANI held the self-titled position of "Investigator."

Resp.: That is false, or at least inaccurate. I did not begin Consumer Affairs Research & Investigations until around March 1995, in order to begin to learn more about criminal investigation positions with the Government. I applied to numerous criminal investigation (CI) jobs with the State and Federal Government thereafter. Too, I showed you the training courses I took from the State of Virginia, paid for by the State of Virginia in 1997.

Ind.: "In this capacity FIORANI drove on public roads in the Eastern District of Virginia looking for individuals violating traffic laws, and for individuals with expired personal property stickers."

Resp.: There is nothing illegal about this and, as I showed you and told you, Mr. Charles Hodges, Fairfax County Tax Authority was my contact regarding personal property tag listings. I also included for you a journal news article where the information was requested by the County to County residents.

Ind.: "He would then report traffic violations to the local police."

Resp.: There is nothing illegal. This is what all persons are suppose to do. This sentence is distorted and misleading.

Ind.: "In the course of operating Consumer Affairs,(/ split) Fiorani obtained a Permit to Carry a Concealed Handgun, number L142516, from the Circuit Court of Fairfax, Virginia."

Resp.: Each has nothing to do with the other. In taking a real close look at the first part of the sentence; then the second part, <u>there was no operating</u> Consumer Affairs during a period of from March to October 1995, since I was working with the National Association of Securities Dealers/USI on a project. It was at that time that several of us made gun applications. (2) My former gun permit application No.: L142516 had expired in Sept. 1997. The new number issued was #L163430, in Aug. 1997, to run for five years until 2003. Where is

it in the indictment? Where does that fact figure in with the true facts? (3) (Enclosed copy) is my 1997 renewal application showing EDWAA Programs as my unemployment in the work space. There is no reference (anywhere) to Consumer Affairs.

Ind.:  "Fiorani possessed the following firearms: (1) a 9 mm

PAGE 2.  Sig Sauer model 226, (2) a .40 caliber Sig Sauer model 229, (3) a 12 gauge Mossberg 500, Pump Persuader shotgun, serial number L865604 and "a *.357 caliber Smith and Wesson, model M686-1, serial number AYF9808.*"

Resp.:  Again, nowhere is there anything illegal with ownership of any of these firearms. However, taking a closer look at #4, I don't own a model M686-1 and the serial number of my Model 19, .357 is BRC9613. This has been in my ownership for about three years.

Something is very wrong with this picture. And, where did they obtain these two wrong pieces of information; and, why was not anything checked before it was "FALSELY GIVEN TO THE GRAND JURY."

Ind.:  "(2) In furtherance of his efforts as an "Investigator" at "Consumer Affairs," FIORANI obtained and carried a gold badge embossed with "federal eagle" design and a badge number, and the words, "Investigator," "Consumer Affairs" and "Research Group."

Resp.: The badge is not and does not represent a United States Treasury badge; it does not say, United States Treasury on it, and there is nothing even remotely improper about its possession. That paragraph is completely distorted and manufactured to make something illegal when it is not.

Ind.: "(3) In furtherance of his efforts as an "Investigator" at "Consumer Affairs," FIORANI attempted to obtain possession of a 1997 Ford Crown Victoria "Police Interceptor" automobile equipped with optional law enforcement equipment."

Resp.: That information was taken directly from the known and completely false affidavit. There is no law anywhere that a person cannot purchase, own or obtain a car like that. The part on "optional law enforcement equipment" is false and was also taken directly from Minard's and Gonzalez's false statements to the IRS.

## COUNTS 1-4

Page 2:

Ind.: 4. "From in or about December 1997, and continuing up to the date of the return of this indictment, in Alexandria, . . . FIORANI, Jr., having *devised and intending to devise a scheme and artifice to defraud, and for obtaining property by means of false and fraudulent pretenses, representations and promises,* . . .

Resp.: This is a manufactured version of what false statements there were in the affidavit, falsely stated by Minard and Gonzalez, where there is still no "factual" proof that any of those faxes contained any "devised and intended . . . obtaining property by means of false and fraudulent pretenses, representations and promises, . . . Is there any motion(s) or paper(s) which can be filed to demand proof of their allegations manufactured in the indictment and showing that it was taken directly from the false statements made by Minard and Gonzalez?

### THE SCHEME AND ARTIFICE TO DEFRAUD

Page 3.

Ind.: 2. ". . . falsely identified himself as a federal law enforcement employee in an effort to obtain a vehicle with law enforcement features."

Resp.: False to the first part and not illegal to obtaining a vehicle "with law enforcement features."

Ind.: 3. ". . . falsely identified himself as a federal law enforcement employee in an effort to negotiate a lower price for the vehicle, . . ."

Resp.: False. Taken from the false statements of Minard and Gonzalez. And, Crystal Ford initiated and issued the promissory note, and it was signed by a manager of the company.

Ind.:     4. "... falsely stated that he was an undercover agent with the U. S. Treasury Department . . ."

Resp.:    False. That information was specifically taken from the Credit Report and Agent Davies outlined that information in the affidavit.

Ind.:     5. "... in an effort to arrange the fraudulent purchases."

Resp.:    That is also false and there is no evidence, except for the false statements contained in the affidavit.

Ind.:     6. "FIORANI filed complaints with legitimate consumer affairs offices in an effort to harass and intimidate Crystal Ford into going forward with the deal."

Resp.:    False. Filing any consumer complaint in any legitimate case is not a form of harassment.

## CONCLUSION

I don't find anything contained in the indictment which is not already falsely stated in the affidavit and where they have not presented any form of evidence that supports their claims that I "falsely stated that I work for the U.S. Treasury." And, they have no evidence where anything clearly shows that I made statements that the U.S. Government was going to pay for anything, especially, when my applications show my name and all of the paperwork show my name.

TO: Glen Trimper, Esq,

FROM: Ross Fiorani

DATE: Oct. 26, 1998

SUBJ. Our constant confrontations, name-calling and bickering. Not a way to defend someone.

Glen:

I am writing this because I do not understand your methods, comprehend your tactics, or am able to work with you in obtaining a proper attorney-client relationship from the beginning, and apparently up to now either. Why?

At this point, I am a severe nervous wreck; very scared of the unknown. I should not be with my attorney, especially in this very serious time and before a life altering experience. After leaving your office over the last several appointments, I blame myself for this problem too. But, I seek your assistance. I need your assistance. How? However, I only get from you name-calling, threats about going to jail, a lack of self respect and whatever else you want to dump on me. And a lack of something, what I don't understand. If you don't want to represent me, say so. Then, request another attorney for me from the court.

I sought another attorney for advise today to speak to in trying to understand why you are acting this way towards me, and what we can do to correct it at this late date. We are suppose to be a team effort, not a horrifying competition against each other. We are to beat the enemy, IRS and U.S. Attorney, not ourselves. When we first met, you came at me with extreme negatives just like Richard. But, different from Richard, he believes me now and trusts me as to my innocence. I felt I was able to let you in on what Richard and I had found out, then you and I could work together. To the contrary, everytime I have to come and meet with you, my stomach tightens up, I tense up, I become a serious nervous wreck, when I should not be.

I deplore your name calling, threats of jail, and your constantly trying to find out things, what, I really do not know. If you want to know, ask me. But, because I cannot come up with a complete answer now, let me think or research it. I gave documents to you which you wanted, so I thought. But, only to have them tossed or given back at me with threats of jail and

Page -1-

making negative references about my reputation and personality.

When I went through my legal training in 1983-1986, I obtained a "B" in legal writing. Most persons have not found my legal writing to be as horrible as you have claimed it to be.

A U.S. District Court Judge, Brinkema, made a positive reference to my legal writing abilities in open court in 1995 or 96, that my legal memorandum was very artfully drafted by a lay person. I do not believe that my legal writing, regarding my Motion to Suppress and Dismiss was as bad as you stated it was. However, you chose not to use parts of it. I believe you should have used some of it, but reworked the language for yourself.

I am not an attorney, you are. But, that gives you no right to chastise me, belittle me, or severely criticize me as you have done. I am frustrated, scared, angry, bitter and feeling very boxed in and afraid of this coming Tuesday and Wednesday next week. You are making it worse. Maybe this is your tactic. Maybe you are right to do it. But, work with me, not against me. Also, I provided you with the only benefits I have, in the documents and real facts and truth as I know it, and have it, which are to show my innocence since you claim I am not a good witness.

I also must somewhat apologize for maybe rubbing Richard's name in your face. But, I never obtained this kind of treatment from him even in our worst days of working together over seven months.

<u>I also have been desperately attempting to prove whatever it may take to show that there is a real possibility that Hackney and Davies have knowingly used false testimony, manipulating that false testimony in their means of obtaining an unconstitutional conviction.</u> That, to me and others, is a very real and very relevant possibility.

I brought in box loads of documents to show you the IRS and U.S. Attorney knew their information from <u>Minard and Gonzalez, and others "unnamed" witnesses --lied.--</u>  <u>It is not impossible.</u> Here we are only four days to go and my life is dwindling away and you don't like me, trust me, believe me, or file anything and everything to dispute whatever the prosecution says. I have a very hard time thinking you want to defend me. WE ARE NOT TALKING HERE, WE ARE YELLING AT EACH OTHER and you are saying that I am going to jail.

I also want to allege PROSECUTORIAL MISCONDUCT. I am not sure whether you will or would after the IRS took many of my personal files and papers, now rampaging through them searching

Page -2-

for something, regardless of my wife's rights to privacy.

   I have been advised to seek a another attorney if you are not really interested in handling this case, as you imply and a guilty verdict. It means an appeal then too.  I admit I am not the best client.  I have not ever been as bellicose and angry as you have been with me, except to portray what they have done to me to you.  As my attorney, you should be coming up with everything and anything to show they lied or are not accurate.  The IRS falsely manipulated evidence . . . manufactured statements, knowingly put on false testimony to a grand jury, and the Prosecution knew it and disregarded it ...

   In conclusion, I would like to know from you before Thurs morning's meeting: What our tactics are?  Defenses are?  What witnesses you want to call?  I wanted to put Mr. Hodges on, Mr. Jeff Baumgardner, Ms. Sharon Wilder, Mr. Seger, etc. . . None of them, however, can say what you want them to say that I did not "impersonate" because to them, I did not.  But, they speak about what facts on the dealerships.  I am very sorry that I did not think, or know I would need witnesses every place I go?

   I gave you information from Fairfax County on my factual gun application and documentation.  It showed I was truthful and that the County did not find anything wrong, contrary to what Hackney is falsely portraying about me. It appears that you are not interested in that.  I provided documents showing Lt. Callahan erred.  I suggested you use documents from FHC's employment, which you asked me about last month, to get for you.  Then, confront David Burnbaum from the Fair Housing Counsel with them. <u>I also presented to you the newspaper clipping concerning my position as an investigator, not a testor.  It appears that you are not interested in confronting Mr. Burnbaum with that either. It disproves his statement(s).</u>

   What documents can you file on my behalf?  I have given you nearly everything I know of, but nothing seems to be what you want to use. I don't want to be prosecuted for something that I did not do, nor plead to something that is —TOO PAT— TO BE REAL AND ACCURATE.

   I hope to hear from you sooner than Thurs, please. Or you can seek a temporary postponement of the trial date so I can obtain new counsel, if you choose to leave.  Let me in on what is going on so we can stop them.

Glen:

October 27, 1998

Subj.: Filing documents and reworking and rewriting my Motion to Dismiss, adding information about Lt. Callahan, unnamed witnesses and Ms. Neal, SCC.

I am leaving the documents with you, including the newest letter from my wife's telephone company, concerning Hackney's seizing her long distance telephone records.

Also, I am putting forth this information and I would like to have you draft it in your own way to reflect the pattern and practice that the IRS and U.S. Attorney's Office had knowledge of the witnesses' false statements, have been previously placed on notice of such.

Mr. Gardiner's draft to the IRS Commissioner concerning paragraph #10 being false.

My subsequent letters to the IRS, June 26 and my meeting with Ms. Carroll on July 26, and her obtaining all such documents regarding our claims of the witnesses' lying to Agent Davies.

My August 10 letter to Ms. Carroll.

My letter to Sen. Roth dated September 5, and a copy being sent to Ms. Fahey at the U.S. Attorney's office.

The Merit Systems Protection Board's October 13 letter to the IRS concerning the false statements and breach of the settlement agreement on February 5, 1998.

Somehow, I would like to see these matter put to the Court as a reasonable method to show prosecutorial misconduct, including Chestnut's statement to Richard about prosecuting me because of my ownership of guns and a member in NRA and LEAA.

Thank you for your assistance with these matters.

Ross