## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROSARIO A. FIORANI, JR. | : | |
| PLAINTIFF, PRO-SE | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | CIVIL ACTION NO: <u>06 - 0739 RWR</u> |
| G. DAVID HACKNEY, ESQ. | : | |
| GLEN A. TRIMPER, ESQ. | : | |
| INTERNAL REVENUE SERVICE AGENTS | : | **ERRATA, CORRECTED REPLY** |
| JOHN WANAT, SPEC. AGT. CID; AND | : | |
| KEVIN DAVIES, SPEC. AGT, CID | : | |
| AND | : | |
| JASON MINARD | : | |
| DEFENDANTS, ET AL | : | |

## PLAINTIFF'S SECOND REPLY AGAINST GOVERNMENT'S
## SECOND REPLY FOR MOTION TO DISMISS

COMES NOW, Plaintiff Pro-Se, to respond and challenge, dispute and correct claims or asserted allegations by the Government in their Second Reply, alleged as fact against <u>Plaintiff's Reply Against The Government's Motion to Dismiss</u> and original Complaint.

For these reasons and on these grounds Plaintiff requests this Court dismiss defendants', the Government's and TRIMPER's Motion(s) to Dismiss, and deny the Government's reliance on immunity, pursuant to the Supreme Court's and other Circuit Courts' decisions against immunity as stated herein below.

### I.  Plaintiff's Response to Government's Rules 4 and 12.

Plaintiff was denied information from the District Court clerk and U.S. Attorney's Office in Alexandria, Virginia to obtain services of process on defendant(s) David HACKNEY, Jason MINARD, and both IRS agents, John WANAT and Kevin DAVIES by the U.S. Marshal and U.S. Attorney, denied release of information on HACKNEY and the other defendants.  See (Pltf's note to Court.)

This Court must dismiss the Government's claims as stated in their 2d reply, (pp. 6-9), "[that]. . .Plaintiff should, or must have served defendants with personal service under the Fed.R.Civ.P. Rule 4(i)(1)(B). Because Plaintiff did not do it, the complaint must be dismissed for failure to properly serve the defendants is a faulty argument on bad reasoning, and contrary to the literal reading of the Rule on proper service of process against Government employees, agents or law enforcement agents.

It is IRS policy that –no personal information– [is to] be divulged on any IRS employee, regardless of who the employee is, whether being a TIGTA agent, IRS civilian employee, CID agent, or other law-enforcement agent is specifically hindered by the Government's own agency rendering Plaintiff's actions as due diligence as possible under these precise circumstances. Moreover, Plaintiff's actions to serve and get from the Government the current address information on defendants, personally, includes Jason MINARD and Steven GONZALEZ. Each has been refused by the Government to disclose MINARD'S (new) home address so MINARD can be served (personally) for this case too. The Government's actions to block, hinder and prevent Plaintiff from obtaining MINARD'S home or work address for personal service (of process) should illustrate the Government is still protecting MINARD from being served and deposed, as well as even protecting him from factual evidence and THIRD-PARTY documents relating to his direct and indirect participation in committing perjury, making false statements to IRS agents by joint manipulation and manufacturing or concocting allegations and claims of crimes that are not crimes, per (former) AUSA Robert CHESTNUT, who told Richard GARDINER, Esq., before or in August, 1998, that Fiorani is not going to get prosecuted because of Gardiner's evidence of IRS misconduct with its witnesses, MINARD and GONZALEZ.

## II. Plaintiff is Under 28 U.S.C. § 1915

The Government tells Plaintiff he is to serve each defendant, agent, 'individually', while each defendant was acting in his official and individual capacity, but acting outside the scope of their duties and adverse to the Constitution and adverse to federal law(s) under 18 U.S.C. § 242, § 371, § 1001, §1503, and § 1961, et seq.

In the Government's 2d reply, (pp. 6-9), it quoted the Rule on service of process on Government employees who are sued in their individual capacity.   That quote –still shows defendants– can be served by a U.S. Attorney's Office or Department of Justice in the(ir) jurisdiction of the defendant's residence or district location. The Government's reading is adverse to reading of the Rule's section that Plaintiff comes under.  Therein, the Government's attorney is misreading, misinterpreting and misstating the Rules for service of process and its reason that this Court must dismiss.  That is the wrong interpretation of the Rule and contrary to what Rule Plaintiff comes under.  Plaintiff falls under 28 U.S.C. §1915 of Rule 4(c), which reads in pertinent parts:  Fed.R.Civ.P. Rule 4(c),

> "When an action is brought *in forma pauperis*, (Title 28 U.S.C. § 1915). . .  the
> court is obligated to appoint a marshal or some other qualified person to make
> service.  . . .Good cause exists to excuse a Plaintiff's failure to serve where the
> Plaintiff is proceeding *in forma pauperis*, and is therefore entitled to rely on
> service by the U.S. Marshal, <u>Olsen v. Mapes</u>, 333 F.3d 1199 (10th Cir. 2003) (no
> evidence in the record that Plaintiffs failed to cooperate with the U.S. Marshals,
> or were otherwise not entitled to their service; Plaintiffs found not culpable for
> their failure to comply with the Federal Rules of Civil Procedure or the court's
> orders.).

It is contrary to that Rule's intention and meaning, and opposite to what the Government relies on under in their 2d reply on pages 6-9.  However, if the Government wants more time pursuant to Fed.R.Civ.P. Rule4(I)(3) (B), it allows a Court to extend [for] a reasonable time, allowing [for] the serve of process . . . to cure the failure to serve, without prejudice against Plaintiff Pro-Se under 28 U.S.C. § 1915.

As of Plaintiff's 2d Reply to Government's 2d Reply, the Government has not filed any motion asking this Court to allow an extension of time per Rule 4, that allows more time to serve defendants John WANAT, Kevin DAVIES and Jason MINARD.

The Government has not given Plaintiff the address of Jason MINARD so he can be served and bring him in to this case under the Rules, and demand the Government formally (criminally) prosecute MINARD and others, under the above-cited Federal and State criminal laws on perjury made in the grand jury, made false statements in both of the Government's use of MINARD'S, GONZALEZ' and WANAT'S affidavits from which an illegal indictment resulted; All their claims, assertions and allegations were made under oath, contrary to the Constitution's Due Process, Equal Rights and the 4th, 5th, 6th, and 14th Amendments.

Unless the Government wants to talk about this case, in camera, with an intent to settle it with the Judge's presence in this case, before discovery?  Please contact the Plaintiff first. It is for these reasons under the Rules that Plaintiff seeks this Court dismiss defendants', the Government's and TRIMPER'S motions to dismiss; And deny TRIMPER'S motion to come under Government immunity also must fail for these reasons as stated below.

### III.  This Case is a Bivens Action.

In Bivens v. Six Unknown Named Federal Agents of Bureau of Narcotics, 403 U.S. 388, (1971), the Supreme Court held against those Federal agents.  This case is a "Bivens action complaint" where two federal agents, John WANAT and Kevin DAVIES acted in such a reckless manner, with total disregard for the consequences of their joint and separate actions that did deliberately violate all Plaintiff's Constitutional and Civil Rights under 28 U.S.C. § 1983. Pursuant to that Supreme Court case and its progenies, defendants WANAT and DAVIES must have known, or should have been told, and was informed by the IRS Commissioner's letter that the Commissioner Rossotti did not sanction, agree to, condone nor approve of anything TIGTA agents WANAT and DAVIES illegally did when WANAT and DAVIES engaged in a criminal and

civil <u>conspiracies</u> converse to the Constitution and Federal criminal laws of, *inter alia*, 18 U.S.C. § 242, § 371, §§ 1503 and 1961 with MINARD and GONZALEZ in such a deliberately reckless, totally illegal manner as these specific acts listed below:

(1). Deliberately falsify MINARD'S and Gonzalez's statements and affidavits in violation of Federal and State laws of perjury, false statements, under oath, § 1001;

(2). WANAT willfully engaged in a 'criminal and civil conspiracy', contrary to § 242 and § 1983, to alter, manipulate facts, evidence and THIRD-PARTY documents of Plaintiff's innocence (of any criminal conduct):

(3). WANAT purposely fabricated, manufactured and submitted to District Court Magistrate Judge Buchanan what was found on and after February 18, 1998, a warrant affidavit that totally lacked probable cause to initiate a constitutional search;

(4). WANAT and DAVIES knew about Plaintiff's Constitutional Rights, the Fourth, Fifth, Sixth and Fourteenth Amendment Rights, violated by each defendant, jointly and separately, when WANAT led the 'unlawful raid' of Plaintiff's home, car and person;

(5). WANAT purposely, falsely and with malice, placed as a cause and condition for issuances of the Search Warrants, that Judge Buchanan would especially rely on paragraph 10 in the search warrant's affidavit, manufactured by WANAT and known by DAVIES, with MINARD as a −protected Government witness−. (18 U.S.C. § 371, § 242 and § 1001).

(6). WANAT manipulated and filed, under oath, as truthful or accurate with the Court and Grand Jury, contrary to the Constitutional protection of our judicial system by such misleading, falsified allegations;

(7). WANAT and DAVIES engaged in criminal or civil conspiracy with MINARD and GONZALEZ. During that conspiracy, WANAT unlawfully approached other AUSAs after AUSA CHESTNUT refused to indict nor prosecute FIORANI.

(8). GARDINER talked to CHESTNUT about MINARD'S illegal telephone threat call to Fiorani

on January 10, 1998. WANAT and DAVIES gave their permission and approval for MINARD to

commit perjury in his and Gonzales' (statements) made to WANAT.

(9). MINARD'S threatening telephone call to FIORANI'S home. was made with a specific intent,

primarily malicious, with a willfully retaliatory and deliberately reckless manner, adverse to 18

U.S.C. § 371 and § 1001[1].

> In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), "Our authority to
> imply a new constitutional tort, not expressly authorized by statute, is anchored in
> our general jurisdiction to decide all cases "arising under the Constitution, laws,
> or treaties of the United States." 28 U.S. C. § 1331." "We first exercised this
> authority in Bivens, where we held that a victim of a Fourth Amendment violation
> by federal officers may bring suit for money damages against those officers in
> federal court. . ."the Fourth Amendment does not in so many words provide for
> its enforcement by award of money damages for the consequences of its
> violation."

> And, In Bivens, 403 U.S., at 396. "Nonetheless, relying largely on earlier
> decisions implying private damages action into federal statutes, see id., at 397
> (citing J.I. Case Co., v. Borak, 377 U.S. 426, 433 (1964)); 403 U.S., at 402-403,
> n. 4 (Harlan, J., concurring in judgment); ("The Borak case is especially a clear
> example of the exercise of federal judiciary power to accord damages as an
> appropriate remedy in the absence of any express statutory authorization of a
> federal cause of action"), and finding "no special factors counseling hesitation in
> the absence of affirmative action by Congress," id., 395-396, "[w]e found an
> implied damages remedy available under the Fourth Amendment." . . .We
> reasoned that the threat of suit against the United States was insufficient to deter
> the unconstitutional acts of individuals. Id., 21 ("Because the Bivens remedy is
> recoverable against individuals, it is a more effective deterrent than the FTCA
> remedy"). 446 U.S., at 19-20.

> Under our Federal criminal codes 18 U.S.C. § 242, § 371 and § 1001, (criminal

conspiracy under color of law and perjury) renders any acts conducted and committed by a[ny]

Government agent, officer or employee still subject to criminal prosecution(s). "The agent or

employee is not entitled to [any] immunity from which their criminal and unconstitutional acts

---

[1]. Black's Law Dictionary, "Perjury", 'The act or an instance of a person's deliberately making material false or misleading statements while under oath.' [Cases: Perjury,–Also termed false swearing, false oath,1. C.J.S. Perjury, §§ 2-3, 5-8, 21,]

were a part thereof." *See* <u>Baranski v. Fifteen Unknown Federal Agents of BATF</u>, 401 F.3d  6[th]

Cir. 2005).  Plaintiff's exhibit, IRS Commissioner Charles Rossotti's letter from his office did not

allow, condone, nor approve those illegal acts committed by (his) two (2) TIGTA agents,

WANAT and DAVIES.  Especially too, where the raid was not related to any tax law violations.

Neither WANAT and/or DAVIES did not have any legal authority, according to the

Commissioner to conduct any raid with a totally lacking probable cause affidavit.  That warrant's

affidavit did purposely contain WANAT'S deliberately made –false statement– now known as

the infamous ¶ 10[2].  WANAT knew of, and had reasons to know it was false when he drafted it.

And, WANAT knew or should had known that the warrant's affidavit lacked probable cause at

the time WANAT submitted it to a partial District Court Magistrate Judge Buchanan on February

5 and 6, 1998.  *See.* <u>Leon v. United States</u>, 468 U.S. 897 (1984) and <u>Franks v. Delaware</u> 438

U.S. 154 (1978); *See also,* <u>Dickerson v. U.S.</u> 528 U.S. 1045 (2000); 2 W. LaFave, Search and

Seizure § 3.7(c), p. 398 (4th ed. 2004); <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).

The possibility that . . . a decision not to prosecute [an innocent person] may well

encourage a prosecutor (HACKNEY) to bring, or continue to bring criminal charges that a [the]

prosecutor knows, or knew, (per CHESTNUT) is not supported by probable cause."[3]  ABA

Model Rules of Professional Conduct, Rule 3.8(a) (1984).  This ethical obligation of every

---

[2].  John Wesley Hall, Jr., <u>Search and Seizure</u>, 3rd. Ed. Lexis Law Publishers, (2000).

Charles Whitebread and Christopher Slobogin, Esqs., <u>Criminal Procedure</u>, 3rd. Ed.,
University Text Series, 1999.

[3].  See Plaintiff Pro-Se's evidence, facts and THIRD-PARTY documents that clearly support that a
criminal conspiracy did exist between the two IRS agents, WANAT and DAVIES, and MINARD and
GONZALEZ, where each did collaborate before January 10, 1998; and between February 6, 1998, to
purposely fabricate, manufacture, manipulate and commit perjury when HACKNEY put forth to the grand
jurors, from his witnesses, WANAT, DAVIES, MINARD and GONZALEZ, what HACKNEY knew was false
statements when each appeared in a grand jury, contrary to what facts and evidence was presented to
AUSA, (former) Robert CHESTNUT.  Under our Fourth, Fifth, Sixth and Fourteenth Amendments rights,
WANAT, DAVIES, MINARD and HACKNEY did purposely violate Plaintiff Fiorani's clearly established
Constitutional and Civil Rights as each was established under the Bill of Rights and in place at the time of
their specific date, February 5 and 6, 1998, and October 31, November 2, 1998.

prosecutor is consistent with the general and fundamental rule that "[a] lawyer should exercise

independent professional judgment on behalf of a client." ABA Model Code of Professional

Responsibility, Canon 5 (1980).

The Supreme Court's Justices, Stevens, Brennan, Marshall and Blackmun, (dissenting)

noted in Imbler v. Pachtman, 424 U.S. 409 (1976), ". . . prosecutorial immunity from § 1983

lawsuits does not leave the public powerless to deter misconduct or to punish that which

> occurs,' in large part because 'a prosecutor stands perhaps unique, amount
> officials whose acts could deprive persons of constitutional rights, in his
> amenability to professional discipline by an association of his peers.'". . . "The
> prosecutor's potential conflict of interest increases in magnitude in direct
> proportion to the seriousness of the charges of police wrongdoing." (Citation
> omitted).

Opposite to the Government's (First and Second Replies), this case is a Bivens

action with very similar facts under the Sixth Circuit's case in Baranski v. Fifteen Unknown

Agents, 401 F.3d 419, 432-33, (6th Cir. 2001), the Sixth Circuit held, "Government officials

> performing discretionary functions generally are shielded from liability for civil damages
> insofar as their conduct does to violate clearly established statutory or constitutional
> rights of which a –reasonable person– would have known." Harlow v. Fitzgerald 457
> U.S. at 818;. . . . "It is not necessary that the very action have been previously held
> unlawful but, given the preexisting law, the unlawfulness of the conduct must have been
> apparent." Stemler, 126 F.3d at 866. "In determining whether an official is entitled to
> qualified immunity, this court asks whether the law was clearly established at the time of
> the [unlawful] alleged action. [citation omitted] A federal right is "clearly established"
> where "any official in his position would have understood that he was under an
> affirmative duty to refrain from such conduct." Doe v. Bowles, 254 F.3d 617 (6th Cir.
> 2001). (quoting Groh, in Baranski).

Plaintiff disputes the Government's reliance on immunity under the Supreme Court's

and many Circuit Courts rulings that deny immunity to a Federal agent who knowingly acted in a

maliciously, reckless manner, totally ignoring Plaintiff's civil rights and Constitutional Rights

under color of law. In Groh v. Ramirez, 540 U.S. at 551, 563-64, (2004), the conclusion there is

(that IRS agents are not entitled to any [qualified] immunity for conducting a search based on a

defective, lacking any probable cause warrant, affidavit. "Given that the particularity

requirement is set forth in the text of the Constitution, no reasonable officer could have believed that a [affidavit] warrant that plainly did not comply with that requirement was valid." Groh, 540 U.S. at 563-64; As in Groh, even "a cursory reading of the warrant. . . would have revealed the glaring deficiency that any reasonable police officer would have known was constitutionally fatal." Id., at 564. (citing Groh, quoting Baranski v. Fifteen Unknown Agents, (citation omitted.)

Agents WANAT and DAVIES had to know before February 6, 1998, when WANAT wrote the affidavit and put in the affidavit a deliberately false ¶ 10, that it would send up a **RED FLAG** (emphasis added), to look closer at the wording of the affidavit as written to GARDINER and DUBE. Both later learned from the affidavit, as in the Supreme Court's decisions in in Groh v. Ramirez,540 U.S. at 563-64; United States v. Grubbs, 547 U.S. ____ (2006), (quoting Groh, 540 U.S. 551, 562, n.5 (2004); Wong Sun v. United States, 371 U.S. 471, 481-482 (1963), (and by providing ex post, a right to suppress evidence improperly obtained and a cause of action for damages."))

The Sixth Circuit found the agents were not entitled to any immunity because of their basing their unlawful search on a defective warrant." The information of WANAT's was intentionally falsified, malicious and deliberately manufactured and no actual dates were even close to a dates that existed in 1992 of Plaintiff's run-in with WANAT. See. (Pltf's. Exhs. 1-25) Accordingly, Plaintiff relies on Bivens, Baranski, Groh and Gonzalez-Lopez renders, (retroactively) or [prospectively] that a Plaintiff's unconstitutional conviction is void due to clear example of the ineffective assistance of counsel in Fiorani's court appointed defense whenever a District Judge (CACHERIS) refuses to allow a Plaintiff's (paid) defense attorneys (GARDINER and DUBE) are hired to represent a defendant (FIORANI), when those collection of unethical acts and constitutional violations as in that case, are similar to the facts in this case. This case rises to the level of a 42 U.S.C. § 1983 for Fiorani's Constitutional and Civil Rights violations committed by Government agents and employee or officer, under color of law, are all subject to

compensation sets aside a court applying Heck v. Humphrey, 512 U.S. 477 (1994), and allows Plaintiff's § 1983 to proceed forward.

## IV. Heck Does Not Apply (to this case) Under Other Circuits' and Supreme Court Rulings

Plaintiff confirmed in his (First) Reply against the Government's Motion to Dismiss that the Supreme Court's ruling in Heck does not apply to this case. This is verified where four Supreme Court Justices pointed out that the majority was rendering serious errors in the majority's ruling by failing to address question(s) of a "criminal defendant" who is not, or has not been able to obtain from a lower [state] court, or a federal district court or a Federal Circuit Court an[y] opportunities to get a 'fair, equitable and fundamental' habeas corpus hearings from which to show his unconstitutional conviction was obtained through constitutional errors and unconstitutional means, or judicial and prosecutorial misconduct." Heck v. Humphrey, 512 U.S. 477 (1994) (dissenting opinion, Souter, J.), ". . .believes that there is a class of criminal convictions where federal habeas corpus is unavailable and where it would therefore not be appropriate to limit the scope of § 1983. Justice Souter held, that § 1983 should be available as a form or collateral attack on state court judgments whenever they are immune from habeas review. Stone v. Powell, 428 U.S. 465 (1976), had removed McCurry's right to a hearing of his Fourth Amendment claim in a federal habeas court, collateral estoppel should not deprive him of a federal judicial hearing of that claim in a § 1983 suit. Allen v. McCurry, 449 U.S. 90 (1980).

Justice Souter, with Justices Blackmun, Stevens and O'Connor, join, concurring in the judgment, "The Court begins its analysis as I would, by observing that '[t]his case lies at the intersection of the two most fertile sources of federal-court prisoner-litigation— the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254.'" "two statutes that 'provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials,'' while 'differing] in their scope and operation." . . .that the statutes were never on a collision course. . . because . . .§ 1983 requires . . . Plaintiffs seeking damages for

unconstitutional conviction or confinement to show the favorable termination of the underlying proceeding." (where there is and has been a conflict among the Circuits, before and after the Supreme Court's ruling in Heck v. Humphrey.)

> The Supreme Court held in Preiser v. Rodriguez, 411 U.S. 475 (1973) ("that a prisoner's § 1983 challenge to the fact or duration of his or her confinement is in substance a petition for habeas corpus and must be treated as such by the federal courts. Section 1983's Congressional intent, literally worded, 'in light of the specific federal habeas corpus statute, "which applies only to persons in custody," 28 U.S.C. § 2254(a), and the habeas statute's policy, embodied in its exhaustion requirement, § 2254(b). . . ."The reason [] is that individuals not "in custody" cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights. Harmonizing § 1983 and the habeas statute by requiring a state prisoner seeking damages for an unconstitutional conviction to establish the previous invalidation of his conviction [does not run afoul] of "the very purpose of" § 1983: "to interpose the federal courts between the States and the people, as guardians of the people's federal rights."

It would be 'an entirely different matter to [] shut off federal courts altogether to claims that fall well within the plain language of § 1983. "[I]rrespective of the common law support" for a general rule disfavoring collateral attacks, . . . where as here, reading § 1983's history" and defeat the Statute's "purpose".  It is an unjust result to block the doors of a federal court from a unconstitutional conviction, where all attempts were made by a wrongfully convicted person who cannot get a court to view any of the facts and evidence in his case, to block him from obtaining, in another federal court forum, under § 1983, the equivalent of a habeas, per the reading and intentions of Congress' enactment of the "Ku Klux Klan Act". (quoting Collins v. Hardyman, 341 U.S. 651, 657 (1951); (citing Mitchell v. Foster, 407 U.S. at 240.). In re., Heck v. Humphrey, 512 U.S. 477, (1994), the Supreme Court Justices Souter, Blackmun, Stevens and O'Connor refused to join in the Court's opinion.  In their view, the majority's reliance on the malicious prosecution analogy was unsound in several aspects as Justice Souter believes that there is a class of criminal convictions where federal habeas corpus is unavailable, and where it would therefore not be appropriate to limit the scope of § 1983, should be available as a form of

collateral attack on state (federal) court judgments whenever they are immune from habeas review. Stone v. Powell, (citation omitted) had removed the McCurry's right to a hearing of his Fourth Amendment claim in a federal habeas court, collateral estoppel should not deprive him of a federal judicial hearing of that claim in a § 1983 suit.

Contrary to the Government's replies, the Supreme Court allowed the bypassing of Heck, holding when a lower court denies or will not provide for a § 1983 Plaintiff to use the federal habeas corpus forum to invalidate a wrongful conviction under the Fourth, Fifth, Sixth and Fourteenth Amendments. A habeas denial allows for § 1983, under the § 1983's literal meaning or reading of the Statute/ Act. The Act says, "[e]very" person acting under color of state law, and to which "we have given full effect [by] recognizing that [§ 1983] 'provide[s] a remedy to be broadly construed, against all forms of official violation of federally protected rights.'" Dennis v. Higgins, 498 U.S. 439, 445 (1991), (Souter, J., dissenting, Heck v. Humphrey, 512 U.S. 477 (1994). ("§ 1983 allows for bypassing Heck where a lower court improperly denied an unconstitutional conviction's reversal under a habeas court hearing allows § 1983 to be held as a proper collateral attack on "a protected Constitutional right" not heard by a habeas court, but in a § 1983 hearing.") See (§ 1983 Statute).

The Government's Motion to Dismiss, says Heck does apply to this case. Plaintiff's facts and case research differs against the Government's Motion to Dismiss and its Second Reply, where even if Plaintiff's facts, evidence and documents eventually made a clear and convincing showing that a conviction was unconstitutional, the § 1983 Plaintiff can [also] make a showing his unconstitutional conviction, under the habeas corpus review, is still entitled to be heard under the plain reading of the § 1983, which does not block nor prevent a Plaintiff from entering a federal court forum to seek damages of and for [his] Constitutional Rights under the Constitution. See Baranski v. Fifteen Unknown Agents of BATF, 401 F.3d 419 (6th Cir. 2005); Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); Groh v.

Ramirez, 540 U.S. 551 (2004); Malley v. Briggs, 475 U.S. 335 (1986);  Hill v. McDonough, 126

S.Ct. 2096 (2006), (Kennedy, J. unanimously held the Plaintiff's § 1983 can proceed.);  Nelson

v. Campbell, 124 S.Ct. 2117 (2004), (O'Connor, J., unanimously held [i]t (the § 1983) was a

habeas action and can proceed.); Fletcher v. District of Columbia, 370 F.3d 1223 (D.C. Cir.

2004); Edwards v. Balisok, 117 S.Ct. 1584 (1997); Taylor v. U.S. Probation Office, 409 F.3d

426 (D.C. Cir. 2005).

## V.  Government's IRS agents, AUSA Hackney, District Judge CACHERIS and TRIMPER committed fraud on the Court against defendant (FIORANI) over period of eight years.

Our Constitution's Due Process Clause in the Fourteenth Amendment contains parts

and sections of the Equal Protection of Law, renders a[n] accused or later wrongfully convicted

person on (that), an alleged criminal charge is to be based on some inkling of probable cause,

pursuant to the Bill of Rights' Fourth and Fifth Amendments.

The Federal Rules of Criminal Procedure's Rule 11, those drafted over the decade and

its revisions grant, and provide, that no –alleged plea–, Rule 11, can be accepted if there is/are

any facts and evidence that would support a 'defendant's' claim or assertions that his plea was

obtained by or through –conspiracy(ies)– Brady v. Maryland 373 U.S. 83 (1963)[4], from his court

appointed (defense) counsel, and by the uses of force, forms of intimidation, actions of trickery–

against the 'defendant' from which an unconstitutional conviction was obtained and handed

down by District Judge (CACHERIS) who participated in the Court's implemented "frauds" and

unconstitutional acts committed against a wrongfully convicted defendant, who is factually

innocent under our laws. Banks v. Dretke, _____ U.S. _____ (2004), (The Fifth Circuit erred in

dismissing Bank's Farr Brady Claim and denying him a certificate of appeal ability on his Cook

Brady claim.  When police or prosecutors conceal significant exculpatory or impeaching

---

[4]. Banks asserts and alleged "upon information and belief" that "the prosecution knowingly failed to turn over exculpatory evidence as required by Brady v. Maryland 373 U.S. 83 (1963)." that withheld evidence would have revealed . . . and Bank's arrest was a setup."  See. Pltf's. Exhs. 1-25, *inter alia.*

material in the State's possession, it is ordinarily incumbent on the State to set the record straight.)  Pp. 17-34.  Strickler v. Greene, 527 U.S. 263, 281-284 (1999), (the three components or essential elements of a Brady claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it impeaches(ing); that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  527 U.S. at 281-282.

Plaintiff has repeatedly been denied by District Judge CACHERIS, the copies of the grand jury transcripts and –alleged– plea hearing, which has exculpatory and materially relevant facts and evidence in those transcripts, which would, when released, prove [that] FIORANI was forced, threatened, intimidated and coerced by both HACKNEY and TRIMPER with CACHERIS' prior knowledge and consent before October 31, 1998 to on and after November 3, 1998.

The Code of Judicial Conduct, (CJC Rule(s)) Rule(s) and Model Rules of Professional Responsibility, (MRPR, Rule(s)) require our judicial system and those who render judgment against another to perform their duties impartially, faithfully, and without bias or prejudice(s) against he/she who is being judged.  However, in this case and what has been exposed by this case, the near decade's facts and evidence expose that there are repeatedly unconstitutional acts and a collection of misconduct committed by an AUSA (David) HACKNEY and the primary (District Court) Judge in this and more than 200 other criminal cases that have come across the desk, benches of the Judge in our judicial system.

These facts of Plaintiff's are illuminated by the various newspaper articles that have been published, totally and jointly independent of anything that this (wrongfully convicted defendant), Plaintiff Fiorani has passed on to them to expose these unethical, unconstitutional facts, evidence and THIRD-PARTY informational documents that show what strongly appears to be corruption in this District Court's criminal dockets before and after 1990. (*Progress on Judicial Ethics, The Judiciary takes steps . . .but not far enough.*  Washington Post Editorial,

September 25, 2006. No writer named). (The FEDERAL judiciary took two steps last week to improve the public's perception of the standards of conduct for federal judges. (Canon 3D(1) and (2) CJC. . . .The Breyer commission report found that in the vast majority of cases, the judiciary did a reasonable job of policing itself. In all but the hightest-profile cases of alleged misconduct, the panel found, . . . –botching cases in only 2 percent of the time. The trouble is that this figure skyrocketed in those cases that command wide public attention. . . .The Commission found that of 17 high-profile cases, nearly 30 percent – five– were not handled properly. Some were dismissed too blithely, others were resolved without giving the targeted judges the ability to respond . . . Such incidents have a corrosive impact on the public's view of the judiciary and have fed dangerous calls by Congress for []investigations of corrupt judges. So it is imperative to make the system work better when it matters the most.

With that said, the Supreme Court has handed down several important decisions that

specifically address a 'criminal' court's and Appellate Court's (mis)handling of judicial

complaints of corruption, or frauds committed on the Court, or where the Court is a party to the

fraud, on the unintelligent party and/or unsuspecting party in a case. The Supreme Court held,

"Fraud on the court is limited to [that specific] act(s) that does, or at least attempts to "defile the court itself", or that which is perpetrated by officers of the court, (defendants' attorneys), as has happened herein, so that the judicial machinery can not perform in the proper, legal manner in an impartial, unbias and untainted way of adjudicating cases. Great Coastal Express, Inc. v. International Brotherhood of Teamsters, 675 F.2d 1349, 1356 (4th Cir. 1982), (quoting "often cited" definition of fraud on the court). Chewning v. Ford Motor Co., 97 F.3d 142, (6th Cir. 1996), (citing 675 F.2d 1349, 1356, (4th Cir. 1982)); Jordan v. Paccar, Inc., 550 S.E.2d 584, (rehg. denied), (Cert. Granted, Feb. 2001).

The Supreme Court held, "This is not simply a case of judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possible to have been guilty of perjury. "...[w]e find a deliberately planned and carefully executed scheme to defraud ..., the Circuit Court of Appeals. ... This matter does not concern only private parties. There are issues of great moment to the public. ... Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public institutions in which fraud cannot be complacently tolerated." Hazel Atlas Glass Co. v. Hartford-Empire Co. 322 U.S. 238, 240-244, (1944).

Contrary to our judicial ethics rules, procedural and Constitutional rights, is has been

held by the Supreme Court and Circuit Courts in future cases that no prosecutor or judge is to

abdicate his role for the purposes of prejudice, biases, and partiality against an accused without

any factual –probable cause– from which a future indictment and forced, intimidated or coerced plea to charges that have no grounds nor basis in facts or law. In this case, under the clear and convincing standard and beyond a reasonable doubt standards in a criminal case, Plaintiff would never of been convicted of any crime(s), were it not for the engaged in criminal conspiracies between AUSA HACKNEY and TRIMPER; and, HACKNEY and CACHERIS, where, to this date, October 24, 2006, CACHERIS, HACKNEY, TRIMPER and WANAT and DAVIES have withheld other revealed –exculpatory facts and evidence– illuminated or exposed by grand jurors, who came forward to state that HACKNEY, overseen by CACHERIS, did alter evidence, documents, misstated, manufactured facts that A CRIME OCCURRED, where there **was no other facts to support anything close to that allegation**.

In Buckley v. Fitzsimmons, 509 U.S. 259 (1993), the Supreme Court's opinion, ". . .A careful examination of the allegations concerning the conduct of the prosecutors during the period before they convened the (special) grand jury to investigate the crime provides the answer." Pp. 274-275, n 5, "The reason that lack of probable cause allows us to deny absolute immunity to a state actor for the function of (fabrication of evidence) is taht there is no common-law tradition of immunity for it, whether performed by a police officer or prosecutor." "The Government has not cited any authority that supports an argument that a prosecutor's fabrication of –false evidence– during the preliminary investigation of an unsolved crime was immune from liability at common law, either in 1871 or at any date before the enactment of § 1983." "[e]very prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial."

In Castellano v Fragozo, 311 F.3d 689 (5th Cir. 2002), the Fifth Circuit held that the elements of a civil conspiracy are: (1) an actual violation of a right protected under § 1983, and (2) actions taken in concert by defendants with the specific intent to violate that right. The Court found that, n. 33., ". . .the record contains evidence that Castellano's seizure was

"unreasonable." Castro admitted that 'probable cause' to arrest Castellano was established when he received evidence implicating Castellano in the arson including: (1) the audio tape . . .had been produced and altered by Fragozo and Sanchez; and, (2) Sanchez's statement concerned the fire. . . ."Under federal law, an illegal arrest cannot be insulated from challenge by a decision of the instigating officer to rely on fellow officers to make the arrest." Whiteley v. Warden, 401 U.S. 560, 568 (1971). "The fact (1) Fragozo, a police officer knew that the audio tape and portions of Sanchez's statement to Castro implicated Castellano in the arson was fraudulent. And, (2) Castro relied on such fraudulent evidence in establishing probable cause against Castellano, satisfies the 'some evidence' standard that Castellano's arrest was unreasonable." Adickes v. S.H. Kress & Co, 398 U.S. 144, 152 (1970) (to act under color of law does not require that the accused be an officer of the State. It is enough that he is a willing participant in the joint activities with the State or its agents.) (Citations omitted).

The Government's agents, AUSA HACKNEY, District Judge CACHERIS and Trijmper each had a role in and were directly or indirectly involved in hiding from Plaintiff Fiorani the exculpatory evidence. The Government's agents, HACKNEY, TRIMPER and CACHERIS did overlook and ignore the Fourth Circuit Court's own Order to file FIORANI'S criminal appeal on or about June 30, 1999. CACHERIS ignored, failed to investigate, and refused to question Plaintiff's claims, assertions and motions that contained a copy of that Court's Order of June 30, 1999. HACKNEY and TRIMPER did draft, without FIORANI'S knowledge, consent nor authorization the plea agreement[5] and Statement of Facts that does still contain not less than 12 purposely false, willfully false and deliberately misleading statements that FIORANI committed a crime or crimes, illustrated in Plaintiff's 25 current exhibits and independent information from third-parties that prove Plaintiff did not commit any crimes, –but for and solely

---

[5]. Virginia's Criminal Code Section 18.2-22; 18 U.S.C. § 371 and § 242; 28 U.S.C. § 3006A.

because of the illegal motives, unconstitutional acts and retaliations of HACKNEY, MINARD,

DAVIES, WANAT, and GONZALEZ, with TRIMPER being a direct participant of the others,

controlled by CACHERIS. And, none of the IRS agents ever gave Plaintiff his *Miranda*

warnings as held by the U.S. Supreme Court, despite Plaintiff's repeated demands both at the

time of the unconstitutional IRS raid in 1998 and afterwards, in each of Plaintiff's (Pro-Se)

appeals without any effective assistance of (court-appointed defense counsel), withheld by

District Judge CACHERIS, adverse to Plaintiff's Fifth, Sixth and Fourteeth Amendment rights,

established by the Bill of Rights and upheld by the U.S. Supreme Court's decision in Dickerson

530 U.S. 428, 429 (2000), ("This Court declines to overrule *Miranda*. . . ."); Miranda v. Arizona,

384 U.S.436 (1966). Schneckloth, 412 U.S. at 226. "The due process test takes into

consideration "the totality of all the surrounding circumstances– both the characteristics of the

accused and the details of the interrogation." Reck v. Pate, 367 U.S. 433, 440 (1961) ("[A]ll the

circumstances attendant upon the confession must be taken into account"). . . .("If all the

attendant circumstances indicate that the confession was coerced or compelled, it may not be

used to convict a defendant"). See, e.g., Wilkins v. May, 872 F.2d 190, 194 (7th Cir. 1989),

(applying Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), to hold that a

suspect may bring a federal cause of action under the Due Process Clause for police

misconduct during custodial interrogation). (quoted in Dickerson, 530 U.S. at 434-436.).

        Therefore, on Plaintiff's new facts and evidence supported by the other 25 exhibits, facts

and THIRD-PARTY information(al) documents, this Court must deny the Government's Motion

to Dismiss and TRIMPER'S Motion to Dismiss, and the Government's alleged defenses of

immunity must also be denied on these facts that mirror Plaintiff's facts, evidence, exhibits and

on Plaintiff's clear and convincing showing that his CACHERIS, court appointed defense

attorney, contrary to the Supreme Court's recent decision in Gonzalez-Lopez, renders and

demands Plaintiff's wrongful and unconstitutional conviction reversible.

## VI.  Federal agents violated Constitutional rights under 4th, 5th, 6th and 14th Amendments.

### 4th Amendment:

Under this Amendment, the Plaintiff is entitled to be free from any unlawful searches and seizures of him and of his personal property, where there is no legitimate probable cause to issue a search warrant. Here, IRS agents WANAT and DAVIES engaged in a criminal (or civil) conspiracy, under color of law, to draft an intentionally false and deliberately misleading search warrant affidavit, that was found to lack any probable cause when the affidavit contained what was [previously] shown to be –knowingly false– information as stated in (defendants') WANAT'S and DAVIES affidavit, ¶ 10. Paragraph 10 was known by WANAT to be false since December 4, 1992 when agent WANAT was the primary agent handling Plaintiff's case in 1992. WANAT knew the IRS did not terminate Fiorani. Fiorani's IRS suspension was reversed by the Merit System Protection Board, (MSPB) in November 1992, resulting in Fiorani to be rehired by the agency. The IRS failed or refused to comply with the MSPB's hearing and finding that Fiorani was a 'victim' of improper IRS conduct by upper management, Cynthia Taylor.

On these specific facts from the Government's own records, IRS agent WANAT and DAVIES, with MINARD and GONZALEZ engaged in a planned scheme to maliciously retaliate against Fiorani from on and after December 22, 1997, rendering Agent WANAT specifically liable where he knew of, about, and was the leader in the February 5, (affidavit) and 6, (raid) in 1998 of Plaintiff Fiorani that also directly involves his wife's home. See Groh v. Ramirez, 540 U.S. 551 (2004); Baranski v. Fifteen Unknown Agents of BATF, 401 F.3d 419 (6th Cir. 2005) and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Plaintiff's exhibit, the IRS' Commissioner, Charles Rossotti's letter from his office did not allow, nor condone the illegal acts committed by two TIGTA agents, WANAT and DAVIES, who did not have any legal authority, according to the Commissioner, to conduct any raid with a

totally lacking probable cause search warrant affidavit. Especially when the search warrant affidavit purposely contained a deliberately made false statement in the affidavit, (¶ 10) that WANAT knew, and had reasons to know, was false at the time he drafted it; and that it lacked any probable cause, before he submitted it to a partial District Court Magistrate Judge Buchanan on February 5, 1998. *See.* Leon v. United States, 468 U.S. 897 (1984) and Franks v. Delaware, 438 U.S. 154 (1978).

### 5th Amendment:

Plaintiff corrects the Government's claims, assertions and submits to this Court that the two IRS agents, WANAT and DAVIES knew of, about and that the Miranda Warnings were an established law, under Miranda v. Arizona, (citation omitted). Plaintiff can prove this aspect against IRS/TIGTA agent WANAT on specific facts and information relating to showing Agent WANAT'S malice, retaliatory actions and engaged in a criminal and civil conspiracy with Jason MINARD and Steven GONZALEZ from on or about December 20, 1997 to November 2, 1998.

On February 6, 1998, the Government's agents, WANAT and DAVIES led a raid of the Plaintiff's home at 5:55 a.m.. At about 6:00 a.m., Plaintiff was handcuffed while in his underwear. From that time forward, until about 11:40 a.m., Plaintiff was kept handcuffed at his dining room table, and he was continued to be questioned by at least three agents at all times, for the duration of nearly six (6) hours. Plaintiff repeatedly said that he wanted to call his lawyer, (John HILLSMAN, Esq.); And, during that time, without Plaintiff being able to answer his incoming telephone calls, because he was kept handcuffed and surrounded by at least three IRS agents at all times, Plaintiff was never given Miranda warnings as required by the Supreme Court's ruling in *Miranda* and later in

In or about April 1992, when Plaintiff was employed with the Internal Revenue Service, Taxpayer Services, Plaintiff was called upstairs to the IRS, CID office. Once there, he was questioned by two IRS/CID agents, one of them was John WANAT and a female agent. Before

any questioning was to begin, Plaintiff was given his *Miranda warnings* and instructed to sign a

form that he was given his *Miranda* warnings before any questioning began.  That was in 1992.

On February 6, 1998, agent WANAT did lead an unlawful IRS raid of Fiorani's home,

also conducted by about five (5) other TIGTA agents and WANAT and DAVIES, with about

three (3) Fairfax County Police officers.  Plaintiff knows the difference between being given

*Miranda* and not being given <u>Miranda</u> warnings between these six (6) years.  The Government's

agents violated Plaintiff's Fifth Amendment, when WANAT and DAVIES, along with MINARD

and GONZALEZ falsely testified, providing unlawfully obtained facts and altered evidence in a

grand jury against Plaintiff, any or all statements illegally or unconstitutionally obtained during

an unconstitutional search & seizure is adverse to the Constitution's Fourth, Fifth and Sixth

Amendments' protection against self-incrimination.  *See.* (5th Amend., U.S. Const., <u>Miranda v.</u>

<u>Arizona</u>, (citation omitted)).

### 6th Amendment:

As stated and outlined above, as Plaintiff's elements of their unlawful actions committed

by IRS agents WANAT and DAVIES, Plaintiff states to this Court, contrary to the Government's

counsel's position, that pursuant to our Constitutional rights, the Sixth Amendment illustrated

here under the other U.S. Supreme Court decisions, makes it unlawful and unconstitutional for

a police officer or federal agent(s) to hold in-custody, –under arrest and not free to leave– and

to interrogate a person without a lawyer present, when that person requests a lawyer to be

present under the Supreme Court decisions in <u>Miranda</u>, (1966) and <u>Dickerson</u>, (2000).

On February 6, 1998, from about 6:00 a.m to not less than 11:30 a.m., Plaintiff was held

in handcuffs, at his dining room table, being surrounded by not less than three (3) IRS agents

during that time, and not allowed to call his attorney, Mr. John HILLSMAN, Esq., nor return the

calls to his father, who had called him four (4) times from Westminster, Maryland to Alexandria,

Virginia between 8:30 to 8:40 a.m. (Pltf's Exhs. Telephone bill).

Plaintiff repeatedly asked for a lawyer during the initial interrogation(s) and he was ignored. But WANAT and DAVIES, with another unknown named agent, was present during the interrogation(s) of Fiorani for the next, nearly 6 hours. Dickerson v. United States, 530 U.S. 428 (2000), (reversing District Judge CACHERIS's order that Dickerson did not need to have Miranda warnings given by FBI agents during in-custodial questioning.). See Miranda v. Arizona, 384 U.S. 486 (1966);  U.S. v. Wallace, 323 F.3d 1109 (8th Cir. 2003);  See also Mickens v. Greene, 74 F.Supp. 2d 586, 613-615 (E.D. Va. 1999) ("The state judge was [] obligated to look further into the extent of the risk and, if necessary, either secure . . . however, the Judge did nothing to discharge her constitutional duty of care. *Id.*, at 614. . .. In the case in which we have devised a remedy for such judicial dereliction, we held [] the ensuing judgment of conviction must be reversed.");  Mickens v. Taylor, 535 U.S. 162, (2002), ("justice must satisfy the appearances of justice.");  Offutt v. United States, 348 U.S. 11, 14 (1954); (Setting aside Mickens' conviction is the only remedy that can maintain the public confidence in the fairness of the procedures employed. ."); Swanson, 341 F.3d 524 (6th Cir. 2003), ("The obligation to administer a *Miranda warning* to a suspect only arises where there has been such a restriction on a person's freedom as to render him "in-custody.");  U.S. v. Czichray, 378 F.3d 822 (8th Cir. 2004), (holding, "The only relevant inquiry in considering whether a person is in custody for purposes of *Miranda*n is how a reasonable person in the defendant's position would have understood the situation. . . .(2) whether the suspect possessed "unrestrained" freedom of movement. . . .(5) whether there was a police dominated atmosphere". . . That a suspect is discouraged from using a telephone in his home during interrogation. . . .whether he is in-custody for purposes of *Miranda*.");  See also Orozco v. Texas, 394 U.S. 324, 326 (1969); Coleman v. Commonwealth, 226 Va. 31, 47, (1983).

## 14th Amendment: Due Process Clause

The Fourteenth Amendment is a Due Process Clause under the Constitution. The collection of misconduct committed by the defendants, both in their official and individual capacities renders, under § 1983, Plaintiff entitled to damages and specific remedies that fall under the Due Process Clause and Equal Protection of Laws that were violated by the defendants.

WANAT and DAVIES should have been properly trained that their joint and personal acts on behalf of the Government, actions the Government claimed that Plaintiff committed crimes of §§ 912 and 1343 did not happen. Neither were properly trained, educated nor legally allowed to serve any search warrant, when WANAT'S "own affidavit totally lacked any probable cause" under the Supreme Court's rulings in U.S. v. Leon, and Franks v. Delaware, 438 U.S. 154 (1978) prevents any Government raid of a private home on what is shown to be unlawful, perjured affidavits, where the affidavit was known to be based on fraud, perjury and fabricated. WANAT did falsify, manufacture, and he did alter all adverse or contrary facts that would have proven Fiorani innocent so WANAT and DAVIES could still conduct the illegal raid on February 6, 1998, or TIGTA agent DAVIES had to know about his partner's deliberate falsification of, manufacturing and altering of all evidence and information obtained by HACKNEY, which is adverse to and against their 'criminal' investigation to prosecute FIORANI.) Plaintiff denies the Government's uses of immunity as a defense of its agents, HACKNEY and CACHERIS.

This Court must deny the Government's claims of immunity, and any immunities must fail under the Supreme Court's and many Circuit Courts rulings that deny immunity to a Federal agent or prosecutor who jointly acts under color of law, where each had knowingly and maliciously acted in such a reckless manner, that totally ignored Plaintiff's civil rights and Constitutional Rights under color of law, § 242 and § 371, or § 1001.

**VII.** <u>**United States v. Gonzalez-Lopez**</u> **is Applicable In To Case Demanding Reversal.**

The Government states that the recent decision by the U.S. Supreme Court <u>does not</u> <u>apply here</u>. Plaintiff states that it does, which requires this Court to render Plaintiff's wrongful and 'unconstitutional conviction' reversible pursuant to that holding by the U.S. Supreme Court as fully applicable here as well. The Government is, again, misreading, misinterpreting and misstating the facts of that case, which are very similar, with independent court (files and docket sheets and papers) illustrates that the Government is misreading that case, blocking, hindering and preventing too, Plaintiff from raising in a Federal District Court, specifics about his ineffective assistance of counsel, under the Strickland standards, held by the Supreme Court.

The <u>GONZALEZ-Lopez</u> holding, decision raises Plaintiff's § 1983 to a different, higher level also raises facts that illustrate Plaintiff's § 1983 is framed as a habeas corpus (hearing), under a plain meaning of Congress, and the Supreme Court to not prevent any (criminal) defendant from being barred by a Court, from being able to file in a Court, without being given proper consideration and a full hearing on the case's merits, without a corrupt judge sidestepping his legal responsibility by arbitrarily denying a meritable case to protect the coverups of an AUSA and –court appointed defense attorney– where there was prior involvement by the IRS agents and AUSA in a prior civil proceeding. See. <u>Kalina v. Fletcher</u>, (citation omitted) and <u>Burns v. Reed</u>, (citation omitted). See also, <u>U.S. v. Gonzalez-Lopez</u>, 546 U.S. ____ (2006), (where the Court further cited ineffective or deficient assistance of defense counsel in <u>Mickens v. Taylor</u>, 535 U.S. 162, 166; and *In re.*: <u>Dickerson v. United States</u>, 547 U.S. ___ (2000); <u>Penson v. Ohio</u>, 488 U.S. 75 (1988), and other ineffective assistance of counsel Supreme Court cases. *In re.*: <u>Wiggins v. Smith</u>, 123 S.Ct. 2527, (2003). *Cf.* <u>Crawford</u> <u>v. Washington</u>, 541 U.S. 36, 61, (2003), "The right to counsel of choice commands . . . that a

particular guarantee of fairness by provided –to wit, that the accused be defended by the counsel he believes is best–."

It is under these Supreme Court decisions and other Circuit Court holdings that raise the questions to this Court, regarding the decision of the Supreme Court in Gonzalez-Lopez, that when any Court fails to provide a means that a defendant/Plaintiff to file his *habeas corpus* or § 1983 renders a § 1983 a form of habeas corpus motion, under the specific intentions of the Supreme Court and Congress' legislation of the § 1983. This is repeatedly illustrated when the Plaintiff Fiorani has been unconstitutionally denied by District Court Judge CACHERIS and the Fourth Circuit, where the Fourth Circuit also wrongfully denied and ignored Plaintiff's meritable claims, before and after June 30, 1999, when Plaintiff suffered serious prejudices because of the District Court's ignoring one of its own court-appointed defense attorneys', TRIMPER'S own unprofessional conduct under the Code of Professional Responsibility, (CPR). These facts do vividly support Plaintiffs claims of ineffective assistance of *–court appointed defense counsel–* under the Supreme Court's Strickland standard making Gonzalez-Lopez highly relevant to this case and Plaintiff's complaint to have his unconstitutional conviction, –reversed– and vacated.

That Court's decision is contrary the Government's counsel's assertion, where a district court judge blocked and hindered Fiorani's, the 'accused's having under his Sixth Amendment, a paid attorney of his choice, with exact provable facts as the Supreme Court's decision in Gonzalez-Lopez. District Court Judge CACHERIS appointed defendant TRIMPER to defend Plaintiff FIORANI (new) counsel to defend the 'accused' for all legal proceedings. The facts of that case is nearly exact to this case and the Government also knows this (facts) too.

## VIII.  ARGUMENT

The Government fails to understand Plaintiff's wrongful conviction was directly caused by the Government's own agents, AUSA HACKNEY, TRIMPER, Judge CACHERIS. And that WANAT and DAVIES had engaged in a series of conspiracies with HACKNEY and CACHERIS,

who allowed false statements, altered evidence, no exculpatory evidence to be presented on the accused's behalf to the grand jury, *inter alia,* MINARD'S perjury, false statements made in the warrant's affidavit with direct help from WANAT and DAVIES. WANAT'S and DAVIES' deliberately made false ¶ 10 placed in the affidavit so a partial Magistrate Judge would rule in favor or WANAT and DAVIES for the search warrants; HACKNEY and CACHERIS condoned TRIMPER'S unlawful appointment, contrary to the Supreme Court's decision in <u>United States v. Gonzalez-Lopez</u> (June 26, 2006), to represent Fiorani, (Plaintiff), as (criminal defendant's) court appointed attorney, under 18 U.S.C. § 3006A. HACKNEY and TRIMPER, with CACHERIS' knowledge, consent and permission, allows TRIMPER and HACKNEY to totally violate all of Fiorani's Constitutional Rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments' and Bill of Rights. See. (Pltf's. Exhs. C-1-10 and N-1-15), where CHESTNUT told GARDINER, Fiorani committed no crimes and that no prosecution nor indictments will be sought.

The Government is misreading, misinterpreting and misstating the Supreme Court's decision in <u>United States v. GONZALEZ-Lopez</u>. <u>GONZALEZ</u> does apply here, where the Sixth Amendment Right to counsel in a criminal atmosphere is the very crucial elements of this case, do apply here, specifically under § 1983. The Government's agents' and clients: HACKNEY, CACHERIS, WANAT and DAVIES, with TRIMPER are directly involved in their blocking, hindering or preventing (FIORANI), from ever obtaining a[ny] federal habeas corpus hearings in a federal court. CACHERIS and TRIMPER jointly and separately kept FIORANI (Government's Motion to Dismiss, District Court's docket sheets) from getting any full and fair opportunity to be heard, and prevented FIORANI from ever having a hearing over the past seven (7) years.

The same events occurred when the Fourth Circuit Court of Appeals continued to unconstitutionally reject and arbitrarily denied, without any legal reasons, justifications, and failed to hold or grant any hearings under the federal habeas standard, 28 U.S.C. § 2255, rendering Plaintiff being blocked, hindered and unconstitutionally prevented from challenging

Page 26 of 32

his factually specific and wrongfully prosecuted by a corrupt AUSA and District Judge

CACHERIS who knew, had reasons to know and was a willing participant in –solely taking the

criminal case because he oversaw the grand jury and all other hearings, motions and matters

filed by Plaintiff, Pro-Se, as a criminal defendant, where the Supreme Court has further ruled on

clear examples of ineffective assistance of (court-appointed) attorney.  Especially when

TRIMPER did knowingly fail, intentionally refused and clearly ignored several District Court

orders and Fourth Circuit Court orders to file Plaintiff's criminal appeal(s), that TRIMPER failed

to do, refused to do, and totally ignored, all contrary to the Sixth Amendment on ineffective

assistance of counsel, under the Strickland standard and its progeny after 1984-2006.

### IX.  Heck v. Humphrey does not overrule Gonzalez-Lopez

The Supreme Court's decision in Heck v. Humphrey 512 U.S. 477 (1994), does not

overrule the Supreme Court decision, Gonzalez-Lopez since these two cases deal with totally

different aspects of the Constitution.  Contrary to what the Government's attorney has claimed,

In re., Heck, four Justices render the Supreme Court's majority decision unconstitutional by its

preventing a 1983 Plaintiff, who is (wrongfully convicted) from entering any Federal court forum

to be heard, because 1983 requires the exoneration exception to be proven.  That exception,

according to four dissenting Justices, makes the decision in Heck unconstitutional by any denial

or rejection by a lower court or Appeals Court that does arbitrarily have subversive agendas

against a § 1983 Plaintiff, (defendant's) who was unconstitutionally convicted and has been

hindered, blocked or prevented from seeking to reverse and eliminate a wrongful conviction on

[those] unconstitutional grounds that are blocked and hindered by the Supreme Court's ruling in

Heck. (Souter, J., dissenting).

Plaintiff's repeated dispute with the Government in this instance is that Heck still does

not apply here, in this case, where too, similar to what elements the Supreme Court's majority

erred in its ruling of Heck, failing to address the open question concerning all relevant factors of

a (Pro-Se), criminal defendant's inability to obtain from another [lower] State or Federal court, a Writ of *Habeas Corpus*, where under the <u>Heck</u> standard, it is irrelevant if a criminal defendant's case is meritable. A State or Federal Court can improperly deny an unconstitutional conviction and the criminal defendant, a Plaintiff in a later § 1983, is still entitled to raise his Constitutional claims under § 1983, pursuant to the literal meaning and reading of the 1983 Statute/Act.

Recently, the Supreme Court ruled in <u>United States v. Gonzalez-Lopez</u>, 546 U.S. _____ (June 26, 2006), rendering this case's federal claims subject to a (new) review by an uncorrupt Court where the Government's AUSA HACKNEY and Judge CACHERIS played a direct and indirect part in the unconstitutional denials of Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment rights, are also subject to § 1983. The Government misrepresented the application of <u>Heck's</u> ruling when using it to block, prevent and hinder Plaintiff's § 1983 civil rights complaint against Government actors who did intentionally cause Plaintiff's constitutional rights to be violated. The Government is relying on that holding, contradictory to other holdings and rulings made by the Supreme Court, that is violating a (wrongfully convicted defendant's) § 1983 claim(s) where the Government did knowingly cause all resulting injuries to a Plaintiff, forcing a § 1983 Plaintiff to prove that his conviction or sentence has been reversed on direct appeal; expunged by executive order, . . ."

The Supreme Court erred by failing to address in <u>Heck</u> is that if a District Court and Court of Appeals unconstitutionally failed to give or grant a prospective § 1983 Plaintiff a(ny) fair hearing(s) and effective assistance of (court-appointed) defense counsel and 'appellate counsel' that would render the Supreme Court's ruling in <u>Heck</u> unconstitutional in that it condones the wrongful denials of a 'defendant's' guaranteed, Constitutional and Civil Rights, under the Fourteenth Amendment and Due Process vacant and empty in its application. The Supreme Court would be condoning the same illegal and unconstitutional acts granted to every citizen, "the presumption of innocence", under the Constitution's Bill of Rights and Due Process

Clause are ignored in a serious error when Heck ruling, that prevents an uncorrupt court and

judge to hear a case and review all facts, exhibits and evidence that a wrongfully and

unconstitutionally convicted 'defendant' is blocked from addressing in that corrupt Court, before

a corrupt District Judge, who has clearly violated those Constitutional Rights of the § 1983

Plaintiff, (defendant).

> Adverse to what the Supreme Court held in Heck, the Court addressed in
> Saucier v. Katz, 533 U.S., at 206, (For a constitutional right to be clearly
> established, its contours "must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.  This is not to say that
> an official action is protected by qualified immunity unless the very action in
> question has previously been held unlawful),  see Mitchell v. Forsyth, 472 U.S.
> 511, 535, n. 12;  but it is to say that in the light of pre-existing law the
> unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635 (1987)).
> "Section 242 makes it a crime for a state official to act "willfully" and under color
> of law to deprive a person of rights protected by the Constitution."

The Court's ruling in Heck fails to address that when a Government's agent, albeit a

Judge or an AUSA who is engaged in a criminal conspiracy with others to get what amounts to

a false conviction, using what the Supreme Court has further said is the unconstitutional use of

perjured testimony and altered, falsified or manufactured evidence, Heck prevents under §

1983 for a wrongfully convicted, unconstitutionally denied 'defendant' from exposing the

'corruption' that exists in another District Court and with a specific Judge, from which if Heck

were to continue to be the case here, condones the Due Process, Bill of Rights and further

permits the ongoing wrongful and illegal conduct referenced above in Saucier v. Katz, 533 U.S.,

at 206.

The Supreme Court ruled in Heck that a § 1983 Plaintiff cannot seek to expose his

wrongful and unconstitutional conviction, (thus invalidating that conviction) through a civil action

that raises those same illegal activities committed by Government officers, agents and judges,

not a habeas corpus § 2254.  The Court's majority did not address in its ruling any alternative(s)

to those who were wrongfully convicted by a 'corrupt' lower district court by unconstitutional acts

committed by a defendant's "court-appointed criminal attorney" who was purposely ineffective, deficient and defective in his representation of his client, the defendant.

The Supreme Court's dissenting opinions cast serious doubt on the Heck majority's opinion of allowing a too strict reading and application of habeas, preventing any innocent from attacking their unconstitutionally obtained conviction through any means, when some Courts have held against, in recent cases, Government agents'-officers' misconduct, prosecutorial and judicial misconduct that involves a prosecutor knowingly using perjured, altered, manufactured and manipulated evidence to obtain an indictment. Or, where in a trial, a corrupt trial judge is shown to be partial, bias, shows favoritism and prejudice against having a fair hearing or trial, renders its own Government agents, judges and prosecutors, abusing their positions, duties, Codes of Ethics and Conduct and Responsibilities rendered by the Heck decision, condoning unconstitutional acts by District Court's and Appellate Courts condoning by the blocking, hindering and preventing a § 1983 Plaintiff from reversing a wrongful conviction continued by a denial of all habeas relief under either § 2254 and § 2255.

(Souter, J., criticizes our reliance on malicious prosecution's favorable termination requirement as illustrative of the common law principle barring Plaintiff's from mounting collateral attacks on their outstanding criminal convictions." . . ."We attempted to "reconcile the apparent contradiction in the authorities," id., at 151, by observing that the presumption of probable cause arises from a conviction can be rebutted only by showing that the conviction was (had been) obtained by some type of fraud, Ibid.") Plaintiff raises many facts about our 'corrupt' judicial system. Those facts expose from the inside, the repeatedly illegal acts that are continued to be hidden from the public, which shows the corruption of our grand jury system. As specifically illustrated by each of Plaintiff's exhibits, facts and evidence, an estimated tens of thousands of persons are unlawfully convicted by the Federal and State judicial system, when they are actually innocent. But, due to a large amount of Government misconduct, as in this

case, that innocent accused gets involved in our judicial system because of a (Government's) prosecutor, police or federal agents and they, prosecutor(s) and police and/or agents, coach, intimidate, or coerce, threaten and demand witnesses' retaliations, malice, and manufacturing, altering and manipulating any such evidence, contrary to the Fourth, Fifth and Sixth Amendments.

Plaintiff's facts and exhibits clearly illustrate how the District Court Judge CACHERIS deliberately overlooked the serious 'criminal' and civil, constitutional violations committed by WANAT and DAVIES, on behalf of MINARD, GONZALEZ and TRIMPER in the Federal system. These factual reasons and Plaintiff's vivid exhibits show that the Government deliberately did nothing less than allow, condone and permit a long-list of criminal acts, which involve 'criminal conspiracy', obstruction of justice, perjury, altering facts, evidence, and AUSA HACKNEY has allowed District Court Judge CACHERIS to engage in a civil or criminal conspiracy with a Judge's court-appointed defense attorney, renders this § 1983 complaint a matter of severe public interest for exposing these ongoing unconstitutional conduct committed by a Government's District Judge, who has continued to abuse his power, duties and position, while also purposely withholding exculpatory evidence of hearing (voice) tapes, other relevant and material evidence, contrary to Brady v. Maryland, 373 U.S. 83, (1963).

Plaintiff's suit is for compensatory damages and punitive damages directly attributable to the unconstitutional and unreasonable search and seizure, and that the District and Appellate Courts have unlawfully failed and refused to grant Plaintiff his alternative avenue(s) into a court, per the dissenting opinions of Justices Soutor, Blackmun, O'Connor and Marshall, which may lie in a § 1983, under Bivens, even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 Plaintiff's still outstanding conviction. . . .In order to recover compensatory damages, however, the 1983 Plaintiff must prove, not only that the search was unconstitutional and illegal when conducted by a Government agent, but

that it caused him actual, compensable injury, which we hold today, does not encompass that the "injury" of being wrongfully convicted and imprisoned reviewable by a court. <u>Tower v. Glover</u>, 467 U.S. 914, 923 (1984).

## X.  CONCLUSION

Therefore, on these facts, evidence, exhibits and THIRD-PARTY documents of Plaintiff's, Plaintiff requests this Court dismiss the Government's Motion to Dismiss and TRIMPER'S Motion to Dismiss, for these reasons and on these grounds as set forth herein, above.

Rosario A. Fiorani, Jr.
Plaintiff, Pro-Se
7115 Latour Court
Kingstowne, VA   22315
(703) 719-0272

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff mailed, postage prepaid, to defendants, Glen TRIMPER and the Government's attorney, c/o U.S. Attorney General's Office, **PLAINTIFF'S ERRATA OF HIS SECOND REPLY AGAINST THE GOVERNMENT'S SECOND RESPONSE TO PLAINTIFF'S MOTION AGAINST THE GOVERNMENT'S . . .** to Glen TRIMPER 2034 Eisenhower Avenue, Alexandria, VA. 22314, and U.S. Attorney's Office, Department of Justice, Ms. Karen Melnick, Esq., 444 Fourth Street, Suite 500, Washington, D.C.  20001 on October 24, 2006.

Rosario A. Fiorani, Jr.
Plaintiff, Pro-Se
7115 Latour Court
Kingstowne, VA   22315
(703) 719-0272